**JONES et ux. v. HERRING et al. (No. 7342.)**

Court of Civil Appeals of Texas. Austin. April 3, 1929.

Rehearing Denied April 24, 1929.

Wm. F. Robertson, of Austin, for appellants.

Geo. Burgess, of Dallas, for appellees.

BLAIR, J. Appellants J. G. Jones and wife, Rosa D. Jones, sued appellees M. M. Herring and wife, Mabel Herring, W. E. Bryarly, and Karl G. Schaufele, to rescind a contract of sale and exchange of real estate

between appellants and Herring and wife, and to cancel the deeds executed in consummation thereof, because of alleged fraud practiced by Herring and Bryarly in the negotiations leading to and inducing the contract. The alleged fraud was denied, and at the conclusion of the evidence the court instructed a verdict for appellees, and rendered judgment accordingly; hence this appeal.

The first ground of fraud alleged was that Herring did not convey in exchange for their property all the land he agreed to convey, but secretly withheld a portion in fraud of their rights. Appellants pleaded a verbal agreement with Herring to exchange their residence in Moser's addition in Dallas for some "trackage" or business property in Foreman's addition in Dallas, "on which Herring had an option." Herring pleaded in hæc verba a written option from Schaufele, of date May 26, 1925, alleging that same was signed by R. V. Cash, acting as his agent, and which described the property, sufficiently for the purposes of this appeal, as being "345 feet on Foreman Street." Herring also pleaded in hæc verba a written contract of sale and exchange of properties between himself, acting by and through Cash as his agent, and appellants, which described the property to be conveyed to appellants, sufficiently for the purposes of this appeal, as being "300 feet on Foreman Street;" and that the deeds from Jones and wife to Herring and from Herring and wife to Jones were executed and delivered in conformity with this contract.

By the option contract with Schaufele he was to convey a frontage of "345 feet on Foreman Street" to Herring. His deed to Herring conveyed a frontage on said street of 439.1 feet, or an additional 94.1 feet. By the contract between Jones and Herring, Herring was to convey a frontage of "300 feet on Foreman Street" to Jones. The deed from Herring to Jones conveyed a frontage of 394.01 feet on said Foreman Street or an additional 94.01 feet.

Schaufele testified: "Mr. Herring had an option on 345 feet frontage on Foreman Street. * * * I first signed the written contract with Mr. Herring for the 345 feet and after that contract was signed I discovered I had a few feet more. I told him he could have it."

Herring testified that Cash acted as his agent in signing both the option contract with Schaufele and the sale and exchange contract with Jones and wife, and, further, that: "I explained to Mr. Jones about the amount of ground I had there. I told him 300 feet on Foreman Street." Mrs. Jones said nothing about the option between Herring and Schaufele, but testified that Herring pointed out the corners of the land without giving any number of feet.

Mr. Jones testified: "Mr. Herring said he had an option on the property and told me a description of the property, and we walked all over it, and said the property he was getting from Schaufele was all the property up to Mr. Schaufele's line. Still Mr. Schaufele had some property in that peach orchard yet. Mr. Herring showed me the extent of the property and I made a trade for the property that he showed me that he had there that he was going to exchange. * * * He didn't tell me how many feet fronting on Foreman Street I was going to get. The whole plat of the land is what he was showing me and he showed me the corners."

While appellants say that they walked over the land and that Herring pointed out to them the corners and lines, still there is no evidence that the land so pointed out was not as a matter of fact conveyed to them by the deed from Herring, executed in consummation of the sale contract. The fact that Schaufele gave Herring additional land after having entered into the written contract to convey him only 345 feet on Foreman street does not affect the matter at issue, because it was given after both of the written contracts were executed, and the undisputed evidence shows that appellants knew before the deeds were executed that Schaufele had more land than was called for in either the option or sale contract, and with full knowledge of this fact they accepted a deed conveying to them a part of the additional land given by Schaufele to Herring. We therefore conclude that the evidence shows without controversy that Herring conveyed more land to appellants than was included in the option contract and the written contract of sale, and more than he agreed to convey, and there was no issue for the jury as to whether Herring had conveyed all the land he agreed to convey.

In this connection appellant J. G. Jones filed a plea of non est factum in which he stated that he never at any time entered into the contract with Cash as alleged by Herring, and for that reason objected to the introduction of the contract in evidence, and also objected to the introduction in evidence of the option contract from Schaufele to Cash, because appellants were not parties to it, and they predicate two propositions upon this action of the court. Neither is sustained. Mrs. Jones admitted that she signed the contract for the sale and exchange of properties. Herring and Bryarly testified that both Jones and his wife signed it; and although Jones was on the witness stand twice, he did not deny having signed said contract. Jones and his wife executed and delivered a deed to their property and received a deed to Herring's property, as well as the sum of $950 difference paid for their property, in consummation of the contract. We therefore conclude that there was no issue of fact as to whether appellants signed the contract. With refer-

ence to the option contract from Schaufele, Herring alleged that Cash acted as his agent in signing it, and about which there is no controversy in the evidence. Appellants alleged that they were to have the property on which Herring had an option from Schaufele. The option contract was therefore admissible as the best evidence of its contents and of the property to be conveyed. We conclude that under the pleadings and proof the court should have admitted in evidence these two contracts, and having been admitted and proved without controversy, no issue was left for the jury. Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612; Kraker v. Bettman-Kleinhauser Clothing Co. (Tex. Civ. App.) 12 S.W.(2d) 247.

■ The second allegation of fraud was that Herring and Bryarly fraudulently concealed from appellants the fact that the railroad tracks and right of way of the Texas & Pacific Railroad Company were going to be lowered at and along the property conveyed by Herring to them, which fact materially affected the value of the property, and of which fact appellants were ignorant. Appellees answered that Herring was approached by Bryarly, who represented appellants, with the proposition of exchange of properties; that Herring took appellants out and went over the property; that appellants considered the matter for several days, and after making a second inspection entered into the sale and exchange contract. Appellees further alleged that at the time appellants inspected the property the Texas & Pacific Railroad Company was making large and extensive improvements in and near the property and was making a cut by said property for the purpose of lowering its tracks, and that this was obvious to appellants and known to them before they signed the contract.

Appellants did not allege any special or fiduciary relation between them and Herring, nor that any special obligation rested upon him towards them, nor that he represented the tracks were being lowered, but only alleged that he did not advise nor tell them that they were being lowered or to be lowered. On the issue Mrs. Jones testified as follows: "My husband and Mr. Herring and I went out over the property. At that time the railroad tracks were on a level with the property and there were some teams working there. Mr. Herring informed us that that was the work going on on the new roundhouse. * * * The teams I saw at work were right along in front of the property. I went out on the property the second time with Mr. Bryarly and my son. I think the teams were still at work the second time I went out there."

Mr. Jones testified that he went on the property with Herring, and further: "I saw the teams down there and he said they were building a roundhouse. I saw those teams, I saw them digging that dirt out with the teams." In other words, appellants testified that they purchased the property for trackage purposes upon the representations of Herring and Bryarly that it was suitable for such purposes; that at the time they inspected the property the tracks were on the level with the land, but that they saw teams working along the side of the property making a cut and removing the dirt; that there was no statement made by Herring or Bryarly about the track being lowered; that they did not know when they closed the deal that the tracks were being lowered or going to be lowered; and that, if they had known such fact, they would not have purchased the property. The evidence is undisputed that Herring told them that the Texas & Pacific would lay tracks to serve the property for $5,200. The evidence is pro and con as to whether the lowering of the tracks at this point injured or damaged the property. The evidence is undisputed that the land could still be served by switch tracks at this point, and that it could be served with switch tracks from another direction and on the level with the land, which the railroad company offered to lay at its own cost, and which would have been laid but for the filing of this and another suit. The evidence is undisputed that Herring told appellants at the time he showed them the property that the Texas & Pacific was going to make extensive improvements near where the teams were working in the nature of a roundhouse and yards. These improvements have been made and were being made at the time. Herring also testified that, when he took appellants to see the land, the teams were working; that he knew the tracks were to be lowered; and that Jones and wife saw the teams working. It is clear from this undisputed evidence that neither Herring nor Bryarly concealed the fact that the tracks in question were being lowered, knowing that the appellants were acting on the assumption that no such fact existed. In 20 Cyc. 16, 17, it is stated: "If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as if the existence of the fact were expressly denied or the reverse of it expressly stated." See, also, 12 R. C. L. 305–307, and cases there cited.

■■ Appellants pleaded and testified that Herring advised them that the Texas & Pacific was to make extensive improvements at and near the property. They went on the ground and saw those improvements being constructed, the teams at work digging the dirt out, and we can see no reason why any duty devolved upon Herring to advise them about the lowering of the tracks, and especially is this true in view of the undisputed fact

that the property could be served by the laying of a switch from another direction, which would serve the property just as well and without any cost to appellants. There is no evidence that Herring knew that appellants were acting on the assumption that the tracks would not be lowered, and since appellants inspected the property on two occasions and saw the teams at work digging out the dirt and making the cut along the side of the property, they cannot now set up as fraud the fact that Herring did not tell them that the cut would be made. And knowing and being informed that extensive improvements were to be made and seeing the improvements being made, would it not, as a matter of law, occur to the ordinary person that he should inquire as to what effect those extensive improvements then in progress would have upon the property? The means of knowledge were equally as well open to appellants as to Herring. The law is well settled that misrepresentations entitling one to relief must be in reference to some material thing unknown to the purchaser, either from not having examined or from want of opportunity to be informed, or from entire confidence in the vendor. Dossett v. Franklin Ins. Co. (Tex. Com. App.) 276 S. W. 1099; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 818; Newman v. Lyman (Tex. Civ. App.) 165 S. W. 137; Thames v. Smith (Tex. Civ. App.) 280 S. W. 859; Spark v. Lasater (Tex. Civ. App.) 234 S. W. 717; Hester v. Shuster (Tex. Civ. App.) 234 S. W. 714; Farnsworth v. Duffner, 142 U. S. 43, 12 S. Ct. 164, 35 L. Ed. 933; Slaughter v. Gerson, 13 Wall. (80 U. S.) 379, 20 L. Ed. 627; Storey's Equity, vol. 1, § 284; Staben v. Hernandez (Tex. Civ. App.) 292 S. W. 259; Bartlett v. Terrell (Tex. Civ. App.) 292 S. W. 280; Campbell v. Jones (Tex. Civ. App.) 230 S. W. 718.

■ The slightest inquiry on the part of appellants in this case would have revealed the fact that the work going on was for the purpose of lowering the tracks. Herring did nothing to prevent them from making such inquiry. Appellants saw the work going on, knew that extensive improvements were being made which might affect the property, but made no inquiry, and we think the following rule announced in Storey's Equity, vol. 1, § 284, should preclude them on this issue: "If the purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his agents, he cannot be heard to say that he was deceived by the vendor's misrepresentations. * * * It is his own folly * * * not to use the means of knowledge within his reach. * * * Courts of Equity do not sit for the purpose of relieving parties * * * who refuse to exercise a reasonable diligence. * * *"

■ The remaining proposition relates to the action of the trial court in sustaining exception to a portion of appellants' petition. The substance of the stricken pleadings was that Bryarly, whom the evidence shows without dispute to have been the agent of appellants, told them that he belonged to a certain church and contributed so much money to its support, in order that he might gain their confidence, and that they might believe any of his representations concerning the value of property. We think the court correctly struck out his pleading as being "wholly irrelevant and immaterial" to any issue in this suit.

We find no error in the judgment, and it will be affirmed.

Affirmed.