## KNOWLES v. ROBINSON.
### No. 1335.

Court of Civil Appeals of Texas. Eastland.
Nov. 9, 1934.

Rehearing Denied Dec. 21, 1934.

Lockhart & Brown, of Lubbock, for appellant.

Carl Rountree, of Lamesa, for appellee.

HICKMAN, Chief Justice.

Appellant sued appellee for cancellation and rescission of a written contract. At the conclusion of the hearing, the court peremptorily instructed the jury to return a verdict in favor of appellee. Upon the verdict returned in obedience to the instruction, judgment was rendered that appellant take nothing, and this appeal followed.

The contract sought to be canceled was as follows:

"The State of Texas, County of Dawson

"This contract of sale or agreement made and entered into on this the 15th day of October, A. D. 1929, by and between John Robinson, party of the first part, and R. B. Knowles, party of the second part, both of Dawson County, Texas, witnesseth:—

"That the party of the first part has sold to the party of the second part, for the sum and upon the conditions as hereinafter set out, the following described real estate, situated in the County of Dawson, State of Texas, and being more particularly described as follows, to-wit:—

"Being all of Lot No. Eighteen (18), Block No. Four (4), of the Gaines Addition to the town of Lamesa, Dawson County, Texas.

"Of the purchase price the said R. B. Knowles agrees to pay in exchange of properties all those certain nineteen (19) coming seven (7) year old mules and one seven (7) year old mare, which mules and mare is to be turned over to the said Robinson clear of all indebtedness, and the assumption and agreement to pay by the said party of the second part of all indebtedness against said property herein and hereby conveyed, being in the sum of $1,500.00, and due and payable to Mrs. G. W. Simpson, said indebtedness being dated August 23rd, 1927, executed by John Robinson and J. P. Cole.

"The party of the second part has sold to the party of the first part, as hereinafter set out the following personal property, to-wit: Being Nineteen (19) coming 7 year old mules and one 7 year old mare.

"Of the purchase price the said party of the first part agrees to pay on the consummation of this deal, in exchange of properties, all of Lot No. 18, Block No. 4, of the Gaines Addition to the town of Lamesa, Dawson County, Texas, and the sum of $500.00 difference is to be paid in cash on the consummation of the deal, and the said John Robinson agrees to pay pasturage on said live stock from the date of a former contract entered into by and between the parties hereto, bearing date of September 27th, 1929.

"The said R. B. Knowles agrees to try to obtain a loan upon the above described real estate, for the purpose of taking up the indebtedness held by Mrs. G. W. Simpson, due diligence being exercised by said party of the second part in trying to obtain said loan, as soon as same can conveniently be made, and said party of the first part herein agrees to use his influence in assisting said party of the second part in obtaining said loan, but this sale is not conditioned on a loan being obtained, but in event a loan cannot be obtained on said premises, the said party of the first part herein agrees with the party of the second part, that should Mrs. G. W. Simpson demand payment of the indebtedness held by her against said premises, that said party of the first part will take care of said indebtedness or protect said party of the second part against said indebtedness for a period of five years, or so long a time as might be needed to obtain said loan, and said party of the first part is to collect all rents due on said property so long as this obligation is in force, and said party of the first part agrees to pay all taxes against said property so long as he handles same.

"In event a loan can be obtained on said premises, the party of the first part agrees to furnish within a reasonable length of time, an abstract of title to said property, said abstract to become the property of the party of the second part herein. Said party of the second part to have a reasonable length of time for the examination of the abstract, and report to the party of the first part of any defect in the title. If the title to said property be found to be defective, the party of the first part to have such defect rectified within a reasonable length of time from the date of the notice of such defect, but in case such defect cannot be remedied within that period, further reasonable time shall be granted, due diligence being exercised by the party of the first part.

"If, upon examination, and after such rectification, (if any is required), as the said party of the first part shall be able to make, it is found that said party of the first part has a good title in fee simple to his property, or at any time said party of the first part is relieved of the responsibility of the indebtedness due Mrs. G. W. Simpson, as set out in this contract, or said party of the second part or any subsequent purchaser agrees to hold the party of the first part herein harmless as to the payment of said indebtedness, the party of the first part agrees upon receipt of the full consideration as hereinbefore stated, to deliver to the party of the second part, or order, a Warranty Deed thereto, duly executed, conveying full title to said premises, free and clear of all taxes, liens and incumbrances whatsoever, except the indebtedness to be assumed by the party of the second part, as hereinabove set forth.

"In witness whereof, the said parties hereunto set their hands in duplicate, this the 15th day of October, A. D. 1929.

"[Signed]   John Robinson
"Party of the First Part
"[Signed]   R. B. Knowles
"Party of the Second Part.

"The State of Texas, County of Dawson

"Before me, H. B. Taylor, a Notary Public in and for Dawson County, Texas, on this day personally appeared John Robinson and R. B. Knowles, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this 15th day of October, A. D. 1929.

"[Signed]   H. B. Taylor,
"[Seal]            Notary Public,
"Dawson County, Texas.

"N. B. It is further agreed and made a part of this contract, that the rent collected by said John Robinson on said premises, is to be applied either to the payment of the indebtedness due Mrs. G. W. Simpson, or interest thereon or to the taxes against said property, and it is further agreed and made a part of this contract, before the signing hereof, that in event the said John Robinson, party of the first part herein take care of the indebtedness to Mrs. G. W. Simpson, and pay same off, then the said R. B. Knowles, party of the second part herein, agrees to pay said John Robinson the same rate of interest as the indebtedness due Mrs. Simpson draws, and said John Robinson is to be subrogated to the rights held by Mrs. G. W. Simpson in said premises."

This contract is a very unusual one, but there seems to be no difference between the parties as to the rights of each thereunder. Knowles delivered the live stock to Robinson, and Robinson paid Knowles the $500 in cash provided for. Robinson was personally liable to Mrs. Simpson on the $1,500 indebtedness secured by a lien on the real estate, and the primary purpose in delaying the execution and delivery of a deed to Knowles was to make some arrangements whereby Robinson could be relieved of such personal liability. To accomplish this end, Robinson was to retain possession and use of the real estate and to collect rents thereon during the five-year period in which he had agreed to protect Knowles against said indebtedness. The rental derived from the premises was to be applied by Robinson to the payment of taxes against the property and the interest and principal of the indebtedness. There can be no question that, during the five-year period, by the terms of the contract, Robinson was entitled to the possession of the house and lot and to the rent which might be received therefor.

The theory of appellant's suit is that appellee did not protect him against the indebtedness for the five-year period, but on the contrary procured Mrs. Simpson to have the property sold under the powers contained in the deed of trust securing same, that Mrs. Simpson became the purchaser at the sale, and later conveyed the property to appellee, who thereafter instituted a suit, now pending, against appellant in trespass to try title. Wherefore it is claimed that the right of cancellation on account of appellee's breach arose.

In June, 1931, the house became vacant, and appellant moved into it. According to his testimony, which, under the instructed verdict against him, we must accept as true, he did not agree to pay any rent to appellee, but moved into it to take care of it until appellee could procure a renter. After obtaining possession, he retained it for fourteen months, and was evicted by a forcible detainer suit in the justice court. During that period of occupancy he rented some of the rooms and retained whatever money he received therefor. He refused to surrender possession to appellee, making the detainer suit necessary.

By his suit he does not declare upon the contract and sue for damages for its breach, but his action is purely an equitable one for cancellation and rescission. In his petition he tenders back the $500 received by him in cash upon the execution of the contract, together with 6 per cent. interest thereon, but neither by his petition nor by his testimony does he at all tender back the value of the use of the premises by him during this fourteen months' period of his occupancy.

Under these facts there are at least two reasons why appellant was not entitled to the relief sought. A party who breaches his own obligations of the contract has no right to secure a cancellation as against the other party on the ground that the latter has subsequently breached his obligations. Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; 9 C. J. p. 1206, § 90; Black on Rescission and Cancellation, § 553. One of the rights granted to appellee by the contract was to collect rents during the life thereof. The act of appellant in withholding possession from the appellee, refusing to pay any rent himself, and thereby depriving appellee of the right to collect the rent, was a breach on appellant's part, which operated to bar his right of cancellation on account of appellee's subsequent breach.

The maxim, "He who seeks equity must do equity," is certainly applicable here. It is required of one seeking the cancellation of a contract that he offer to restore the original status. In order for that relief to be granted, the general rule is that it must be made to appear that the situation of the parties is such that they may be restored to their former position. Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Hoeldtke v. Horstman, 61 Tex. Civ. App. 148, 128 S. W. 642; Donoho v. Hunter (Tex. Civ. App.) 242 S. W. 282; Hurst v. Knight (Tex. Civ. App.) 164 S. W. 1072; 7 Tex. Jur. pp. 958, 959, § 46; 9 C. J. p. 1207, § 93. The evidence clearly established that appellant received substantial

benefits, in addition to the $500, under the contract which he seeks to cancel, and it would be manifestly inequitable to permit him to repudiate that contract and at the same time retain these benefits. It cannot be said that the use and occupancy of the premises for fourteen months was not a substantial benefit to appellant and corresponding deprivation to appellee. The rights of the parties with respect to possession of the premises having been provided for in the contract, and it appearing indisputably that appellant's claimed right to possession was referable thereto, it must be held that such benefit was received under the contract, thus imposing upon appellant the duty to restore.

Affirmed.

### On Rehearing.

In our original opinion this language was used: "Neither by his petition nor by his testimony does he at all tender back the value of the use of the premises by him during this fourteen months' period of his occupancy." In his motion for rehearing appellant called our attention to the fact that, in a supplemental petition contained in the transcript, he did make such a tender. We therefore withdraw the above-quoted statement.

Having discovered this error in our opinion, we have reconsidered the entire case, but have reached the conclusion that the proper disposition was made thereof, notwithstanding the error. Whatever might be the meaning of the contract, it is certain that appellant had no right to procure a conveyance of the house and lot, except upon fulfilling a condition precedent, namely, that appellee be freed from liability on his indebtedness to Mrs. Simpson. If appellee was guilty of any technical breach of his contract, it was insubstantial in so far as the rights of appellant are concerned. There is no showing that appellant could not have procured a deed to the property at any time up to and including the day of trial upon complying with the conditions of the contract. On the other hand, one of the substantial provisions was that appellee should have the rent accruing prior to the time the property should be conveyed to appellant, and appellant's act in refusing to surrender possession of the premises after he had moved upon them was more clearly a breach of the contract than was appellee's act in having Mrs. Simpson sell the property and later convey it to him. This is purely an equitable proceeding, and appellant, who himself breached the contract and made it necessary for appellee to protect himself, cannot come into a court of equity and secure a cancellation.

The motion for rehearing is overruled.