POWELL v. PIONEER BUILDING & LOAN ASS'N et al.

No. 1926.

Court of Civil Appeals of Texas. Waco.
Oct. 7, 1937.

Rehearing Denied Dec. 2, 1937.

Second Rehearing Denied Dec. 23, 1937.

A. C. Johnston, of Waco, for appellant.

Street and Street, Nat Harris, and Mabel Grey Howell, all of Waco, and Vernon Goodall, of San Antonio, for appellee.

GALLAGHER, Chief Justice.

A brief preliminary statement of the transactions out of which this suit arose will aid in understanding the issues involved.

T. H. Weempe, joined by his wife, Mrs. Sallie L. Weempe (now Mrs. Sallie L. Powell and appellant herein), on June 7, 1930, entered into a written contract with Jones Building Corporation, hereinafter called Building Corporation, for the purchase of the house and lot involved herein. Said contract contained the following recital: "Said corporation is the owner of the land and premises described as follows, to-wit: Lot 11 in Block 7, Higginson Addition to Waco, Texas. The agreed value of the same being $3250.00. Said property is subject to the following liens and encumbrances: $2550.00, payable at the rate of $27.50 per month (on or before privilege) including both principal and interest." Said contract contained the further recital that said Weempe and wife owned lots 13 and 14 in the same block in said addition, and that the agreed value of the same was $700. The other provisions of said contract, so far as material here, were, in substance, that each party sold and agreed to convey to the other its or their property aforesaid; that each party should assume the encumbrances and liens on the property conveyed to it or them and pay to the other the difference in cash or notes, such notes to be secured by vendor's lien and deed of trust lien; that each party thereto had deposited conveyance papers with C. S. Iden, escrow agent; and, finally, that when all title objections had been cured, each party agreed to deliver to the other a warranty deed conveying its or their property to the other, and to comply with the other provisions of the contract.

The testimony showed that Weempe and wife deposited a conveyance of their property, as required by said contract, while the Building Corporation did not do so but deposited a check in lieu thereof. Said contract was executed on Saturday. Mrs. Weempe testified that she moved into the house on said lot 11 on the Monday following. There was no testimony showing whether there were encumbrances on said lot at the time said contract was made. On Tuesday following the execution of said contract, said Building Corporation conveyed said lot to R. O. Seawell for a recited consideration of $1,550 cash and a note for $1,700, payable to Pioneer Building & Loan Association (hereinafter called appellee or Association) to secure which note a vendor's lien was expressly retained. Said note by its terms bore interest from date at the rate of 8.4 per cent. per annum, payable

monthly, and was to become due and payable when nineteen certain shares of the capital stock of said Association, issued to said Seawell, should mature according to its by-laws. A deed of trust to further secure said note was, on the same day, executed by said Seawell and wife to E. C. Street as trustee. Said note and deed of trust contained various provisions reciting the privileges of the maker of said note and defining his obligations as a stockholder in said Association. Seawell and wife thereafter executed a warranty deed conveying said lot to appellant as her separate property. Said deed was dated June 14 and acknowledged June 19, 1930. The consideration recited therein was the sum of $700 cash, the assumption by the grantee of said $1,700 note executed by Seawell to appellee, and the execution and delivery by appellant and her husband of a note payable to said Seawell, due five years after date, for the sum of $850, with interest from date at the rate of 8 per cent. per annum, payable monthly. A vendor's lien to secure the same was expressly retained. A deed of trust dated June 14 and acknowledged June 17, 1930, was executed by appellant and her said husband to John F. Sheehy, as trustee, to secure said note. The testimony does not disclose just when the deed from Seawell and wife to appellant was delivered to her nor when the note and deed of trust executed by her and her husband passed from their hands, but circumstances indicate that such exchange of instruments occurred on or about June 21, 1930. Someone representing the Building Corporation delivered the deed to appellant and at the same time delivered a passbook issued by said Association, dated June 10, 1930, which recited a purported purchase by R. O. Seawell and T. A. Weempe of nineteen shares of installment stock in said Association, the respective amounts to be paid monthly as dues and as interest and the penalty for failure to make such payments. Appellant testified that she noticed Seawell's name on the passbook delivered to her; that she asked what it was doing there and said she thought Weempe's name should be there; and that they said: "We used that to make it legal." She further testified in this connection that their original agreement with said Building Corporation was that it was to carry the remainder of the consideration over and above the agreed value of the lots given by them in exchange, in one single note; that the same was to bear interest at the rate of 6 per cent. per annum and the monthly payments required would be $21.40

each. She admitted, however, that Mr. Jones, president of the Building Corporation, shortly after the execution of the contract of purchase and before the consummation of the same as aforesaid, told her that said corporation could not carry the whole amount and that there would have to be two notes; that she didn't know whether her husband heard this conversation but that he was nearby at the time. She further testified on cross-examination that she, her husband, and Mr. Jones, two or three days after they occupied the property, discussed the payments to be made on the place, and that Mr. Jones in that conversation said something about a loan, "something in regard to this going through some other loan." There was testimony tending to show that the Building Corporation, on June 21, 1930, wrote appellant a letter, making a statement of the transaction and stating specifically that she was purchasing said property and assuming $1,700, payable to appellee; that the monthy payments would be $21.40, including principal and interest; and also that she was executing to the Building Corporation a note for $850, due five years after date and bearing interest at the rate of 8 per cent. per annum, payable monthly, and that the payments on both obligations would amount to $27.07 per month. Appellant testified that she had no recollection of receiving or reading such a letter, but suggested that her husband might have received it. Appellee, however, failed to show affirmatively that said letter was in fact delivered to the Weempes. Payments were made by the Weempes to appellee in substantial accord with the provisions of the passbook as aforesaid until about January, 1933. Such payments amounted in the aggregate to approximately $650. The $850 note executed by appellant and her husband to Seawell passed to the Building Corporation. Appellant testified that the sum of $200 had been paid on it. She further testified that during said time she placed additional improvements on said lot of the aggregate value of $500.

Some time in January, 1933, appellee was pressing for payment of delinquent installments, and appellant then told its collector that she "was not going to have any more to do with it and that it was all crooked." No further payments to either appellee or said corporation were made. Appellant secured a divorce from Mr. Weempe in June, 1933, and an order changing her name from Weempe to Powell. About that time appellee declared its note due and caused

Mr. Street, trustee in its deed of trust, to advertise the property for sale.

Appellant, on July 3, 1933, instituted this suit against appellee, Pioneer Building & Loan Association, and Jones Building Corporation. She asserted ownership in her separate right of the house and lot in controversy herein; that according to the contract, the same should have been conveyed direct to her by said Building Corporation; that she had recently learned that said property was first conveyed to one R. O. Seawell and a lien fixed thereon in favor of said Association in the sum of $1,700; that the provisions thereof were more onerous than her original contract of purchase prescribed; that at the time she accepted the deed to such property she did not know that it had been conveyed to Seawell and was being by him conveyed to her; that they represented to her that all the papers delivered in said transaction were according to the original contract of purchase; that she believed and relied on the same; and that the Building Corporation conspired with the Association to fraudulently impose upon her. She prayed that upon final hearing all instruments and obligations executed by her in favor of either said corporation or Association should be canceled and held for naught; that she recover the sum of $700, the value of the lots given by her in exchange for said property, with legal interest from June 7, 1930; that she recover of said defendants all moneys paid to them by her; that she also recover the value of the improvements placed by her on the property, with a lien thereon to secure all the same. Appellant, in connection therewith, sued out a writ of injunction restraining appellee from selling said property under its deed of trust. The trustee was not a party thereto and made the sale as advertised. Appellee purchased the property at said sale on a bid of $500. Appellant, however, remained in possession.

Appellant, on June 5, 1936, filed herein her third amended original petition, in which she repeated and amplified the allegations in her original petition and sought a rescission of her contract of purchase, or in the alternative, damages as claimed in her original petition, with foreclosure of lien on the property to enforce the collection thereof. Other alternative relief was asked, but we do not deem it necessary to recite the same. Appellee Pioneer Building & Loan Association filed an answer, and a cross-action in which it sought recovery against Seawell on his note to it and a foreclosure of lien on the property to secure the payment of the same. Seawell filed a written appearance in the cause. The Building Corporation did not file any written pleading but appeared at the trial by its attorneys. It was conceded that it had released or would release the $850 note and lien securing the same held by it. A jury was impaneled to try the cause, but at the close of the testimony the court dismissed the jury and rendered judgment vacating the trustee's sale of the property to appellee, awarding appellee a recovery against Seawell on his note to it in the sum of $2,222.60 unpaid principal and interest (stipulated attorney's fees having been waived) and foreclosed the lien on said property against all the other parties to the suit to secure such recovery.

### Opinion.

■ Appellant submits a group of propositions based on the theory that there was a conspiracy between the Building Corporation and appellee to perpetrate a fraud upon her by creating a lien on the property involved with terms more onerous than contemplated at the time the original contract of purchase was made; that such fraud was actually perpetrated, as recited in the foregoing statement; that she discovered such fraud about January, 1933, and then and there declared she would not have anything further to do with appellee and ceased payments both to it and the Building Corporation; that she was therefore entitled to repudiate the whole transaction and recover the value of the lots given in exchange, the value of the improvements made by her on said property, and all sums paid both to the Building Corporation and appellee. Appellant, by such propositions, asserts, in effect, that the testimony raised issues of fact which, if found in her favor, would authorize or require the court to enter a decree rescinding the purchase and compensating her for all sums expended in that connection. The material provisions of the contract of purchase have been hereinbefore set out. On its face it it a contract for the purchase of community property in which, for some undisclosed reason, the wife had joined. The ownership, as between appellant and her husband, of the property to be given in exchange was not shown by such contract. A material part of the consideration was the promise to pay the sum of $2,550 in the future, either to a party or parties holding en-

cumbrances on the land or in notes to be executed by the grantee when deed was delivered. Since appellant was under the disabilities of coverture, this part of the contract was apparently an obligation of the husband. An inspection of the contract discloses that it was indefinite with reference to the terms and conditions of the encumbrances to be assumed by the purchasers, and that it must necessarily have been contemplated that such details should be supplied by parol. The Building Corporation had not then executed a deed and placed it in escrow, but had merely deposited a check. Such contract of purchase was therefore wholly executory, and under the holding in Campbell v. Chaney, 125 Tex. 201, 82 S.W.2d 638, 640, par. 1, the Building Corporation was the sole owner of the property at the time it executed and delivered its deed thereto to Seawell. The opinion in said case, while written by a Commissioner, was in answer to certified questions and was adopted by the Supreme Court. There is nothing in the record to show that appellee had actual knowledge of the existence of such contract. Clearly, a conspiracy between the Building Corporation and appellee to perpetrate a fraud on appellant or her husband could not be based merely on imputed notice arising out of any occupancy of the property by them. Neither can it be assumed that appellee contemplated that the situation would be misrepresented to them or any other person to whom Seawell might convey the property.

The original contract of purchase, as before stated, was apparently a community undertaking, based, to a large extent, upon the personal obligation of the husband. The actual consummation of the same involved his giving a personal note to the Building Corporation for $850, secured only by a second lien on the property, title to which he permitted to be placed in appellant as her separate estate. She had the advantage of his counsel and protection throughout the transaction. There is not the slightest intimation that he was not fully cognizant of every detail and knew and approved the manner in which the contract was finally consummated. Neither is there anything to suggest that he was not alert to protect their mutual interests, much less that he would countenance the perpetration of a fraud upon her. He was not called as a witness nor was the failure to do so explained. Appellant testified affirmatively that two or three days after she moved into the house, Mr. Jones informed her, in substance, that the Building Corporation could not carry the entire deferred payment of $2,550 and that there would have to be two notes, and that about the same time she, her husband, and Mr. Jones discussed such deferred payments and that the latter said something about some other loan. She joined her husband in signing the $850 note to Seawell and in signing and acknowledging the deed of trust securing the same at least two days before Seawell acknowledged the deed conveying the property to her. An examination of the passbook which she admits invoked an inquiry discloses that it had not only the name of Seawell but also the name of her husband on it, and that it recited that a certificate of stock had been issued and the payments required to be made thereon. The undisputed testimony as a whole shows, we think, that she had knowledge of sufficient facts to put a prudent person on inquiry with reference to whether the contract as finally consummated was materially different from the one originally entered into, and that the mere reading of the instruments placed in her hands would have revealed every point of difference. In an action for the rescission of a purchase of land on the ground of fraudulent representations of the vendor, where it is shown that such purchaser was in possession of sufficient facts to put him on inquiry as to the truth of such representations and that pursuit of such inquiry would have disclosed the falsity thereof, a rescission will be denied. Donoho v. Hunter, Tex.Com.App., 287 S.W. 47, 48, par. 3; Jones v. Herring, Tex.Civ.App., 16 S.W.2d 325, 328, par. 7; 7 Tex.Jur. p. 921, § 24, and authorities cited in notes thereto.

Apparently, the first payment to appellee was made by Seawell on June 11, 1930. Appellant, however, began making regular monthly payments on July 21st of that year and continued doing so until January 1, 1933, a period of two and a half years. Each of such payments was entered in the passbook which she received at the time of the consummation of the transaction. When appellant, in January, 1933, repudiated any obligation to make further payments, the situation was materially changed. The Building Corporation had disposed of the lots conveyed to it and could not restore the same. She had made various improvements or alterations in the condition of the property in controversy and she had enjoyed the value of the use and occupancy of

the same for two and a half years. During practically all this time she knew, or by the exercise of any degree of care whatever could have known, every provision of the obligation Seawell had executed to appellee. Relief by rescission and cancellation will not as a general rule be accorded unless the situation of the respective parties is such that they may be restored to their former position. Knowles v. Robinson, Tex.Civ.App., 77 S.W.2d 222, 224, second column (writ refused) and authorities there cited; Wichita Farm Lighting Co. v. Moore, Tex.Civ.App., 46 S.W.2d 383, 384, par. 4; 7 Tex.Jur. p. 958, § 46, and authorities cited in notes thereto.

We do not think that the testimony raised issues of fact which, if found in appellant's favor, would have entitled her to rescission. We do not deem it necessary, however, to determine whether the testimony raised issues of fact which, if found in her favor, would have nevertheless authorized recovery on her alternate prayer for damages. There was, as we have heretofore stated, no testimony raising an issue of a conspiracy between the Building Corporation and appellee to perpetrate a fraud on the Weempes, nor to charge it with notice of any purpose on the part of the Building Corporation to do so. Damages, if any, suffered by appellant were therefore, if recoverable at all, recoverable only against the Building Corporation. The trial was held approximately six years after the transaction was consummated. The purchase by the Weempes involved a promise by them to pay the sum of $2,550, with interest thereon at the rate of at least 6 per cent. per annum, in addition to the lots given by them in exchange. The Building Corporation voluntarily released the $850 note held by it, together with the interest accruing thereon for said period of six years, less the sum of $200 actually paid to it by appellant. We do not wish to extend this opinion by including therein the details of the actual calculation. We deem it sufficient to say that the recovery against appellant by appellee of $2,222.60 was considerably less than the amount of the deferred payment with interest at 6 per cent. to date of judgment, after allowing credit for all sums paid by her to both the Building Corporation and appellee. Appellant, at the time of the trial, had also had the value of the use and occupancy of the property for a period of six years. Stated briefly, the release by the Building Corporation of its $850 note and lien securing the same more than compensated appellant for any damages she could have possibly recovered under any phase of the testimony.

The judgment of the trial court is affirmed.

### On Appellant's Second Motion for Rehearing.

Appellant filed a motion for rehearing, which was overruled. She then, with leave of the court, filed a second motion for rehearing, in which she asserts that the amount of the judgment rendered herein by the trial court is larger than appellee's pleadings justify. Appellee has replied thereto by filing a remittitur of such asserted excess. In accordance with the terms of such remittitur, the recovery awarded appellee by the trial court is here reduced to $1,900, with interest thereon from the date of said judgment as specified therein, and as so modified, said judgment is here re-affirmed. Except as to such relief, said motion is overruled. The costs of appeal are adjudged against appellee.