**BECK et ux. v. HUMPHREYS.**

**No. 11117.**

Court of Civil Appeals of Texas. San Antonio.

March 4, 1942.

Rehearing Denied March 25, 1942.

Dillon H. McDaniel and Chas. E. Thompson, both of McAllen, for appellants.

Myrick & Johnson, of Harlingen, for appellee.

MURRAY, Justice.

This suit was instituted by Robert N. Humphreys, as executor of the estate of Floyd Shock, deceased, against W. C. Anderson, W. H. Beck and his wife, Mary J. Beck, seeking to recover the amount of principal, interest and attorney's fees alleged to be due upon five certain promissory notes for the aggregate principal sum of $2,250, signed by W. C. Anderson and endorsed and transferred to the Shock estate, without recourse, by W. H. Beck; and further seeking a foreclosure of an alleged vendor's lien against 40 acres of land located in Hidalgo County and known as Farm Tract No. 301 of the West Tract Subdivision of a portion of the Llano Grande Grant.

The trial began to a jury but resulted in an instructed verdict and judgment in favor of the Shock estate against W. C. Anderson and the Becks, from which judgment the Becks alone have prosecuted this appeal.

These notes grew out of a transaction whereby there was an attempted exchange of properties between the Becks and the Andersons. W. H. Beck and wife owned a homestead, consisting of 40 acres of land known as Farm Tract No. 301, out of the West Tract Subdivision of Llano Grande Grant in Hidalgo County, which they agreed to convey to T. C. Anderson in exchange for a building and lot in San Benito, Cameron County. T. C. Anderson had some judgments against himself so he desired to have the Beck property conveyed to his son, W. C. Anderson. He also desired to borrow $2,250 from the Shock estate, upon the property received from the Becks. The entire deal was simultaneously closed in the office of John C. Myrick, Esq. T. C. Anderson executed and delivered to the Becks a deed to the building and lot in San Benito, and W. H. Beck and wife ex-

ecuted and delivered to W. C. Anderson a deed to their 40-acre homestead. This deed recited a consideration, among other things, of the five vendor's lien notes involved herein. These notes had been previously signed by W. C. Anderson and left with Myrick. W. C. Anderson also executed a deed of trust on the Beck land securing the five vendor's lien notes. W. H. Beck endorsed, without recourse, the five notes 'and also signed, without recourse, a transfer of the notes to the Shock estate. The $2,250 loaned by the Shock estate was then disbursed by John C. Myrick, attorney for the Shock estate, in the following manner, to-wit:

"April 24, 1940, Examination of
   Abstract                  $   15.00

| | |
|---|---:|
| April 24, 1940, Examination of Abstract | $ 15.00 |
| April 25, Deed-notes and D. of .T. | 4.00 |
| April 25, Transfer of notes... | 1.50 |
| April 25, J. J. Willingham... | 45.00 |
| April 25, Recording deed, D. of T. & Tr. | 4.00 |
| April 25, Fed. Rev. Stamps | 3.00 |
| April 25, State Rev. Stamps | 2.10 |
| April 25, S. & C. taxes | 150.33 |
| April 25, School taxes | 239.11 |
| April 25, Water Co. Taxes | 271.95 |
| April 25, Affidavit | .75 |
| April 25, Rec. Affidavit | .75 |
| April 27, Repairs on Bldg. | 250.00 |
| April 27, W. H. Beck | 861.00 |
| April 27, W. C. Anderson | 401.51 |
| | $2,250.00" |

The State and County taxes in the sum of $150.33, the School taxes in the sum of $239.11, and the Water Company taxes in the sum of $271.95, were taxes assessed against the Beck property.

The Becks moved out of their homestead and into the property acquired by them from T. C. Anderson, but discovered almost immediately that they had been defrauded and that the title to the Anderson property was bad. They then hastened to move back to their homestead and filed suit against W. C. Anderson and T. C. Anderson, seeking rescission of the exchange of property and also damages. They did not at this time seek a cancellation of the vendor's lien notes held by the Shock estate, nor did they make the Shock estate a party. This suit resulted in a judgment rescinding and cancelling the exchange of properties and awarding the Becks damages in the sum of $600, which damages they later settled for the sum of $500 cash.

As a defense to the notes sued on herein the Becks plead the failure of the title to the Anderson property and the fraud perpetrated upon them by Anderson.

We are met at the threshold of this case with the obvious fact that the Becks are seeking cancellation of the vendor's lien notes held by the Shock estate without offering to do equity by tendering into court the money, and offering to make restitution for the benefits which they have received from the Shock estate. They received from John C. Myrick, as agent of the Shock estate, $861 in cash. They were benefited by having the taxes paid on their homestead, in the sum of $661.39. An offer to make restitution must precede a request for rescission and cancellation. 7 Tex.Jur. 958, § 46; Grupa v. Grupa, Tex. Civ.App., 98 S.W.2d 217; Casualty Reciprocal Exchange v. Bryan, Tex.Civ.App., 101 S.W.2d 895, 899; Powell v. Pioneer Bldg. & Loan Ass'n, Tex.Civ.App., 111 S. W.2d 764.

In Black on Rescission and Cancellation, § 197, p. 510, it is said: "In practically all cases of rescission, restoration of the status quo is an essential prerequisite to the right to rescind."

If the Becks could secure in this suit the cancellation of these vendor's lien notes they would have complete rescission of their unfortunate land deal, but they cannot secure such cancellation without first offering to do equity by tendering into court the money they have received at the hands of the attorney for the Shock estate.

It is true that the Becks contend that the original deal was an even exchange of properties and that there were not to be any vendor's lien notes. Yet, when the deal was closed, they signed a deed reciting that there were notes and a retained vendor's lien. They endorsed and assigned these notes to the Shock estate. The endorsement and transfer were without recourse but this does not affect the lien against the 40 acre tract. It is valid and subsisting unless cancelled in a court of equity. To secure this equitable relief they must either tender into court the money and benefits they have received or plead facts which would excuse them from making restitution.

The trial court properly instructed a verdict for the Shock estate and the judgment based thereon is affirmed.