Charles F. BANTUELLE d/b/a Charles
McEntire, Appellant,

v.

James D. and Josephine WILLIAMS,
Appellees.

No. 05-82-00781-CV.

Court of Appeals of Texas,
Dallas.

Dec. 2, 1983.

Rehearing Denied Jan. 11, 1984.

Charles Bantuelle, Dallas, pro se.

George Randle Earle, Biggers, Beasley, Amerine & Earle, Dallas, for appellees.

Before AKIN, VANCE and STEWART, JJ.

## PER CURIAM.

Charles Fred Bantuelle appeals from a judgment in which the trial court construed a deed as a mortgage and canceled it and also awarded forfeiture of consideration paid, $1,000 in usury penalty and $2,500 in attorney's fees to Mr. and Mrs. Williams. The basis for the judgment was incorporated into a fifteen-page memorandum decision which the trial judge subsequently designated as the court's findings of fact and conclusions of law. Bantuelle, in twelve points of error, attacks this memorandum decision as being without support in the evidence presented at trial and argues that a judgment in his favor should have been granted by the court. We hold that the court's memorandum contains sufficient findings and conclusions based on the evidence to support the judgment and accordingly overrule all of Bantuelle's points of error. The Williamses, at oral submission, requested this court to reform the judgment to award them $2,000 in usury penalty instead of $1,000. We overrule this request for reformation because this point was not properly presented to us by cross-point. TEX.R.CIV.P. 420.

The suit arose out of a transaction concerning the homestead of Mr. and Mrs. Williams. Bantuelle contends that he purchased the home in a conditional sales transaction after the Williamses became $1,342.52 in default to their mortgage company. Mr. and Mrs. Williams contend that they borrowed money from Bantuelle on a short term loan and used their home as security.

The events surrounding the transaction are greatly disputed but they culminated in the Williamses signing a warranty deed, a seller's affidavit, an assignment of escrow, and an option to repurchase. These papers gave Bantuelle title to the property and gave the Williamses an option to repurchase the property within sixty days for $2,342.52. The Williamses contend that they did not intend to sell their home, the papers were never explained to them, and Bantuelle represented to them that he was loaning them $1,342.52 for the past due mortgage payments and that they were supposed to pay him $2,342.52, which was the amount of the loan plus $1,000 interest. Prior to the expiration of the sixty days, Bantuelle wrote the Williamses demanding that they repay the money on a day certain or vacate the premises. They made inquiries and then brought suit to have the deed canceled. The court found in favor of the Williamses and from this judgment Bantuelle appeals.

Because Bantuelle's points are often multifarious and contain material better left to the argument section of the brief, we have carefully examined his argument under each point, as we are required to do, and have answered each point as we understand his argument to be.

### Memorandum Decision

Bantuelle's first two points of error are that the trial judge committed fundamental error and abused his discretion by joining the suit as a party and injecting his own legal theories into the case and that the court erred in making findings of facts which were based on, related to, or inferred from TEX.REV.CIV.STAT.ANN. art. 3810 (Vernon Supp.1982–1983).

■ We first note that although Bantuelle alleges fundamental error by the trial court, in civil matters fundamental error occurs only in extremely limited circumstances, such as when the court does not

have proper jurisdiction over the action. Therefore, we will assume that Bantuelle is alleging reversible error in his first point of error and we will address it accordingly.

The thrust of Bantuelle's complaint is that the trial court erroneously based its judgment on a finding that Bantuelle had violated article 3810, which deals with the statutory notice requirements for sales under deeds of trust, and that this theory had been neither pleaded nor proved in this case.

■ It is apparent from a reading of the memorandum decision that the trial judge made numerous references to article 3810, sometimes in analogizing it to the public policy of the state and sometimes specifically applying it to the facts of this case. We agree with Bantuelle that article 3810 was not an issue in this case, but we disagree with his contentions that its use by the trial judge was reversible error. If a judgment is correct on any theory of law applicable to the record, this court will affirm it regardless of whether the trial court gives correct legal reasons for its decision. *Maher v. Gonzalez*, 380 S.W.2d 764, 765 (Tex.Civ.App.—San Antonio 1964, no writ); *see also Trigg v. Blakemore*, 387 S.W.2d 465, 468 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.) (on rehearing); *Home Indemnity Co. v. Giles*, 392 S.W.2d 568, 569 (Tex.Civ.App.—Austin 1965, no writ). Despite the unnecessary references to article 3810, there are sufficient recitations in the memorandum decision, supported by the evidence, to support the judgment.

■ The Williamses pleaded, as their first theory of recovery, that the transaction with Bantuelle was a loan secured by a deed to their home in violation of article XVI, section 50 of the Texas Constitution. Section 50 prohibits mortgages of the homestead except to secure the purchase money for, or improvements on, the homestead, and declares that all pretended sales are void. In order to support a judgment for the Williamses on their deed-as-mortgage theory, all the court was required to find was that the transaction was not intended as a sale. *Sudderth v. Howard,*

560 S.W.2d 511 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

The evidence showed that Mr. and Mrs. Williams' homestead was valued at approximately $25,000 to $30,000 and was subject to a mortgage of about $15,000. Instead of making the mortgage payments, Mrs. Williams had used the money to play bingo and had fallen behind in the payments. Norma McDowell, an acquaintance of Mrs. Williams, saw the house listed on the foreclosure list and told Mrs. Williams she knew people who would loan her money and gave her Bantuelle's card. Mrs. Williams called Bantuelle and they met to discuss the transaction. How many times they talked and exactly what they discussed was hotly contested. On the day before the house was to be sold at public auction, Bantuelle, Mrs. Williams, and Mr. Williams, who was unaware of the foreclosure proceedings, met in Norma McDowell's office. At this time Mr. Williams learned that foreclosure was imminent and, after a heated discussion, the documents were signed.

The Williamses testified that the transaction was never intended by them to be a sale, Bantuelle never represented it as a sale, they signed the documents because Bantuelle told them they had to in order to get the money, and the only money they received was a $1,342.52 cashier's check made out to the mortgage company.

Bantuelle testified that he bought the Williamses' house in a conditional sales transaction for $2,342.52, he gave them a cashier's check made out to the mortgage company, and he gave Mrs. Williams $1,000 in $100 bills without Mr. Williams' knowledge. The Williamses have remained in possession of the property at all times.

■ Construing the deed as a mortgage, the court found: the Williamses had fallen behind in their payments; they had sought out Bantuelle; they desired a loan; there was no independent evidence of a desire to sell; Bantuelle agreed to make a loan; Bantuelle gave the Williamses a check for $1,342.52 made out to Fort Worth Mort-

gage Company; $2,342.52 was to be repaid in sixty days; Bantuelle demanded and received a mortgage, pledge, or hypothecation of the borrowers' property; Bantuelle did not desire to exercise possessory rights until default; the transaction had no independent substance except as a mortgage; and the transaction was a loan transaction. These findings by the court, supported by the evidence, form a basis for judgment in favor of the Williamses that they secured a loan with a deed to their homestead in violation of article XVI of the Texas Constitution.

■ Bantuelle complains of six specific references made by the trial court to article 3810. Five of these concern findings by the court that the transaction was a subterfuge to circumvent the anti-forfeiture laws and one concerns a reference to public policy as expressed by article 3810. Bantuelle argues that without the "contamination" of article 3810, a judgment in his favor was fully justified. We disagree. It is apparent from a full reading of the memorandum decision that the court's judgment, though containing extraneous findings and legal theories, was based on a finding that the transaction entered into was a loan and not a sale. Because the trial court's references to article 3810 were immaterial to the judgment in favor of the Williamses, its use by the trial court was neither an abuse of discretion nor reversible error.

### Deed-As-Mortgage

Bantuelle's third, sixth, and eleventh points of error all attack the trial court's classification of the transaction as a loan secured by a mortgage. He argues that the documents conclusively establish that the transaction was a conditional sale and the Williamses failed to prove otherwise. In this respect, he first contends that in order to construe a deed, absolute on its face, as a mortgage there must be some evidence that both parties *intended* the deed to be security for a loan. *Barrera v. Gonzalez*, 341 S.W.2d 703, 704 (Tex.Civ. App.—San Antonio 1960, writ ref'd n.r.e.); *Rincon Investment Co. v. White*, 54 S.W.2d 1052, 1053 (Tex.Civ.App.—San Antonio 1932, writ dism'd). He argues that because the Williamses deny knowledge of signing a deed, they have failed, by their own admission, to show that they intended the deed to be security for a loan. We cannot agree with this argument.

■ It was uncontroverted that the documents were prepared by Bantuelle and that the Williamses had never seen them prior to the meeting in Norma McDowell's office where they were executed. According to the Williamses' testimony, Bantuelle told them that he was willing to lend them the money, that it was necessary for them to sign the documents in order to get the loan, and that they signed all the documents proffered by Bantuelle so that they could get the money to pay the past due mortgage payments. There is no question that a deed to their home was one of these documents. We hold that where a person signs documents intending them to secure a loan and one of these documents is a deed to his home, the requisite proof is met to show that he signed a deed to his home intending it to secure a loan.

Bantuelle next contends that the Williamses failed to overcome by clear and convincing evidence the presumption that the documents reflect the true intent of the parties. *Perry v. Long*, 222 S.W.2d 460, 465 (Tex.Civ.App.—Dallas 1949, writ ref'd). He argues that the only evidence introduced to show that the transaction was a loan secured by a house was the Williamses' "worthless parol testimony" and that this testimony falls far short of being clear and convincing. We disagree.

■ We begin by noting that a presumption is nothing more than "a rule of law requiring the jury [or judge] to reach a particular conclusion in the absence of evidence to the contrary." *Sudduth v. Commonwealth County Mutual Ins. Co.*, 454 S.W.2d 196, 198 (Tex.1970). Evidence to overcome the presumption that the documents reflect the true intent of the parties can be in the form of parol testimony and a deed absolute on its face may be shown by

parol evidence to have been intended as a mortgage given to secure a debt. *Wilbanks v. Wilbanks*, 160 Tex. 317, 330 S.W.2d 607, 608 (1960); *cf. Barrera v. Gonzalez*, 341 S.W.2d 703, 704 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). We must look to the evidence presented concerning the circumstances preceding, attending, or subsequently occurring which would support the trial court's construction of this transaction as a loan secured by a mortgage. *Loving v. Milliken*, 59 Tex. 423, 425 (1883).

The events preceding the transaction can be gleaned from the testimony of Bantuelle, Mrs. Williams, and Norma McDowell. Mrs. McDowell, who was an acquaintance of Bantuelle's and also a real estate agent, testified that when she gave Bantuelle's card to Mrs. Williams, Mrs. Williams never indicated to her that she wanted to sell her home. Mrs. Williams testified that she called Bantuelle, who told her that he did not have any money to loan at that time, but that he came to her house, looked around, and then told her to find out exactly how much the mortgage company needed. She further testified that she called him back and told him the amount needed and that later he sent a message through Norma McDowell that he had the money and that they should meet soon.

Bantuelle, on the other hand, testified that Mrs. Williams called him repeatedly about a loan, that he told her he did not make loans, that he finally agreed to come out and look at the property, that he offered her a conditional sales transaction of paying off the past due mortgage plus $1,000 cash, that she refused at first but later called him back and agreed to the deal and told him to give the check to her husband and the cash to her.

As to what occurred during the actual execution of the documents, the two main areas of dispute concern what was discussed in the thirty minutes preceding the signing of documents and the amount of money that changed hands.

The Williamses contend that the time period was spent with Bantuelle calming down Mr. Williams as he was greatly upset with his wife about the foreclosure. Mr. Williams testified that he was reluctant to go through with the deal because of the $1,000 interest but that he finally agreed because he thought Bantuelle was a friend of Norma McDowell's and was only trying to help them and because Bantuelle assured him that they could work something out about the payment of the $1,000 interest when the sixty days were up.

On the other hand, Bantuelle contends that this time period was spent with him carefully explaining to the Williamses the structure of a conditional sales transaction. He testified that he went down on his knee and went over the documents "paper by paper almost word for word" in his explanation. During cross-examination when questioned as to whether he explained the $1,000 cash payment to Mr. Williams during this time period, he replied that he did not. Later, when questioned about whether he told the Williamses that he was buying their house for $1,300 or $2,300, he answered that he was not sure that they even got into it.

Turning to the testimony concerning the $1,000 payment, Bantuelle testified that he followed Mrs. Williams' instruction and gave her the cash and Mr. Williams the check. He testified that this was probably done simultaneously with the execution and notarization of the documents as he did not "make a habit of doing the consideration before the execution."

Mrs. Williams denies receiving $1,000 in cash. Mr. Williams testified that Bantuelle was never alone with his wife and he never saw him give her any cash. Norma McDowell, who was present at this time as she was notarizing the documents, testified to seeing Bantuelle give Mr. Williams a cashier's check but did not see him give Mrs. Williams any cash. She also testified that she thought the Williamses were entering into a loan transaction and did not know that it was a conditional sale.

The court found that the Williamses only desired a loan and were only seeking a loan, that they were in "necessitous circum-

stances," that they were without bargaining power and that the transaction had no independent substance save as a mortgage, and that the court found it to be such regardless of the documentary form into which the transaction was cast by way of subterfuge. The court further found that it accepted the Williamses' testimony that the $1,000 had never been paid because of the strong support it received from circumstantial evidence which included the lack of business records.

■ Bantuelle attacks this last finding as showing that the court placed the burden of proof on him to prove that the $1,000 was paid when the correct burden should have been on the Williamses to prove that it was not paid. We disagree that these findings relate to who had the burden of proof. Rather these findings merely give the court's rationale for accepting the Williamses' testimony and rejecting Bantuelle's. The record is replete with evidence giving the court adequate justification for electing to believe the Williamses' testimony over Bantuelle's. For instance, the evidence showed that the documents signed by the parties lists the grantee as Charles A. McEntire and all of the documents were signed in that name. It is undisputed that Bantuelle actually signed the documents using the name of Charles A. McEntire. Indeed, the case was originally filed listing Charles A. McEntire as the defendant and Bantuelle appeared at a deposition answering to McEntire. In response to questions from the Williams' attorney at the deposition, he said his name was Charles Addison McEntire and gave a birthdate and birthplace that was, as was revealed at trial, the real birthdate and birthplace of a Charles A. McEntire who was deceased. He also stated that Charles Fred Bantuelle was an associate of his and that he had never used the name Bantuelle.

Prior to trial, portions of this deposition were stricken and changed by Bantuelle. The court allowed the Williamses' attorney, over objection, to question Bantuelle as to whether these answers were correctly transcribed and the reasons for the changes.

When Bantuelle questioned the relevancy of the line of questioning, the court replied that it went to his credibility which had been placed in issue in the case. Bantuelle answered that the answers had been correctly transcribed but that he had changed them because they were incorrect and inaccurate. He testified that he used the name Charles A. McEntire as an investment name only and was not trying to use another person's identity.

■ Since this was a trial before the court, the judge, as the trier of fact, was the sole judge of a witness' credibility and when the testimony is conflicting, if there is evidence of probative force, his findings will not be disturbed. *Weaver v. Brink*, 613 S.W.2d 581, 584 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.); *Martin v. Flener*, 543 S.W.2d 756, 759 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Phrases in this part of the trial judge's decision such as "this court does not believe," "it doesn't make sense" and "he (Bantuelle) would have this court believe" indicates that the court was not shifting the burden of proof but rather was making findings on issues in which there was conflicting evidence.

■ The undisputed evidence was that the Williamses were delinquent on the first lien by $1,342.52, that a cashier's check in this exact amount was given to the Williamses by Bantuelle, that a deed was prepared by Bantuelle and was signed by the Williamses, that the Williamses had sixty days to "repurchase" the property for $2,342.52, and that they remained in possession of the property at all times. That $1,342.52 was given to the Williamses and $2,342.52 was to be repaid in sixty days is clear and convincing evidence that this transaction was a loan and not a sale. Accordingly, we overrule Bantuelle's third, sixth, and eleventh points of error.

### Usury

Bantuelle's fifth, seventh, and eighth points of error all attack the trial court's finding that the loan was usurious. He first argues that usury could not have ex-

isted in this case as a matter of law because the documents did not reflect that the Williamses had an absolute obligation to repay the loan.

▮ In order to prevail on a claim of usury a party must show that there was 1) a loan of money, 2) an absolute obligation that the principal be repaid, and 3) an exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). It is this second requirement that is of concern here because the documents on their face do not reflect an absolute obligation to repay the money borrowed. Under the documents executed, the Williamses could either exercise their option and redeem their property or not exercise it and incur no further liability. The trial judge found that the fact that the Williamses would permanently lose their home if they did not exercise the option constituted an economic compulsion that satisfied the absolute obligation to repay requirement. Bantuelle attacks this finding as being legally insufficient to support a finding of usury.

▮ The trial judge, though finding that the substance of the transaction was a loan, held that if Bantuelle had waived his claim to the property and brought suit to recover the amount advanced by him he could not have recovered. However, this holding by the trial judge was an erroneous conclusion of law and, as such, is not binding on us. *Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697, 702 (Tex.Civ.App. —Fort Worth 1978, no writ); *Jett v. Kahn*, 273 S.W.2d 431, 434 (Tex.Civ.App.—Beaumont 1954, writ ref'd n.r.e.). The evidence conclusively established that Bantuelle gave the Williamses a check for $1,342.52 to reinstate the past due mortgage ·payments. As previously stated, the documents do not reflect an express promise by the Williamses to repay the amount advanced; however, since the court accepted the Williamses' testimony that the transaction was a loan, the law will impute the existence of a debt owed by the Williamses to Bantuelle, thus creating the relationship

of debtor and creditor. *Wells v. Hilburn*, 129 Tex. 11, 98 S.W.2d 177, 180 (1936); *Brannon v. Gartman*, 288 S.W. 817, 821 (Tex.Comm'n App.1926, holding approved). This relationship necessarily carries with it the obligation to repay the loan. The holding by the trial judge that Bantuelle could not have recovered had he chosen to sue only for the amount loaned was in error as an implied promise is as binding on the parties as a promise expressly stated in the documents. *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12, 15 (1957); *Adams v. Big Three Indust., Inc.*, 549 S.W.2d 411, 415 (Tex.Civ. App.—Beaumont 1977, writ ref'd n.r.e.); *NHA, Inc. v. Jones*, 500 S.W.2d 940, 945 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). As there was an obligation to repay based on the transaction entered into between the parties, the trial judge's findings concerning economic compulsion were immaterial and unnecessary to the judgment. We note that the trial judge held that the usurious nature of the loan relieved the Williamses from the necessity of repaying the $1,342.52. This finding, however, does not negate the fact that the Williamses would have been obligated to repay this loan had it not been usurious.

Bantuelle also argues that the Williamses did not meet their burden of proving that the transaction was a subterfuge to conceal the charging of usurious interest. *Home Savings Ass'n v. Crow*, 514 S.W.2d 160, 166 (Tex.Civ.App.—Dallas 1974), *aff'd* 522 S.W.2d 457 (Tex.1975). He further contends that the claim of usury was based on an oral contract which under law would not sustain a claim of usury, and that the court erred in basing its finding of usury on circumstantial evidence which improperly placed the burden of proof on Bantuelle. We cannot agree with these arguments.

▮ We must look beyond the form of the transaction to its substance in determining the existence or nonexistence of usury. *Gonzales County Savings and Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976); *quoted in Stedman v. Georgetown Savings and Loan Ass'n*, 595 S.W.2d 486, 488–89 (Tex.1979). Interest

exists if the transaction includes compensation for the use, forbearance, or detention of money "regardless of the label placed upon it or the artfulness with which it is concealed." *Skeen v. Slavik*, 555 S.W.2d 516, 521 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Accordingly, we hold that when it is clear that $1,342.52 was loaned but the documents reflect that $2,342.52 must be repaid in sixty days to save the plaintiff's home, this is evidence that the transaction was a subterfuge to conceal the charging of usurious interest.

As to Bantuelle's argument that the court improperly placed the burden of proof on him to prove himself innocent of usury, we have also previously held that this was not done. The findings of the court, of which Bantuelle complains, relate to the issue of credibility and not to the burden of proof and, therefore, do not present error.

Bantuelle also argues that the Williamses' allegations of usury cannot be sustained because there are no writings that reflect a loan. *Matador Sales Co. v. Wells Co.*, 583 S.W.2d 679, 681 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). He contends that a claim of usury under TEX. REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon Supp.1982–1983), cannot be based on an oral agreement to pay usurious interest. This argument is not applicable to the situation here because the option to repurchase determines the sum to be repaid. This option clearly states that the sum of $2,342.52 is to be repaid in sixty days. Thus Bantuelle's contention that the usury claim is predicated upon an oral agreement is without foundation.

### Election Among Alternative Recovery Theories

In Bantuelle's tenth point of error and elsewhere in his brief, he asserts that the Williamses "elected" to try their case on their alternatively pleaded theory of fraud in the execution. As stated before, the Williamses pleaded, as their first theory of recovery, that they executed a deed to their homestead to secure a loan in viola-tion of TEX. CONST. art. XVI § 50. In the alternative, they pleaded, by trial amendment, that they were defrauded by Bantuelle into executing the documents. The trial judge found that the Williamses had not sustained their burden of proof as to their cause of action for fraud, but did grant them recovery under their deed-as-mortgage theory.

Bantuelle contends that because the Williamses continually testified that he did not let them read the documents, that he told them they were loan documents, and that they signed them believing they were loan papers, somehow constituted an election to try their case on their fraud theory. We know of no theory of law which states that testifying to facts that may prove one theory of recovery constitutes an election to abandon another alternatively pleaded theory of recovery. A party may plead alternative theories of recovery, present the facts as they understand them to be, and recover under any one of their theories. *Albright v. Long*, 448 S.W.2d 564, 566 (Tex.Civ.App.—Amarillo 1969, no writ); *Texas General Indemnity Co. v. Sheffield*, 439 S.W.2d 431, 434–35 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.).

Bantuelle also argues that the Williamses' repeated testimony that they did not know they had signed a deed constituted an "express rejection" of their deed-as-mortgage theory. We disagree. The documents themselves, which showed the execution of a deed, coupled with the Williamses' testimony as to their reasons for signing the documents support their allegation that they did, in fact, sign a deed to their home to secure a loan.

### Motions For Judgment

Bantuelle brings two points of error that the trial court erred in overruling his motions for judgment on the issues of usury and deed-as-mortgage. The grounds urged below as a basis for judgment are wholly different than the ones now argued on appeal. Consequently, we cannot consider

these points because they do not comport with the motions made in the trial court. *Reed v. Wormley,* 554 S.W.2d 254, 257 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.); *Shoppers World v. Villarreal,* 518 S.W.2d 913, 916–17 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); TEX.R. CIV.P. 268.

### *Equity*

In his last point of error, Bantuelle contends that the trial court erred in proceeding with the action to cancel a deed without first requiring the Williamses to tender the amount of the alleged debt. He claims that the Williamses never took any steps to tender even the $1,342.52 they acknowledge receiving from him. Although there is authority to support Bantuelle's position that restoration or an offer to restore consideration received by one seeking to cancel a deed is a condition precedent to maintaining a suit for cancellation of an instrument, *Raney v. Mack,* 504 S.W.2d 527, 534 (Tex.Civ.App.—Texarkana 1973, no writ); *Beck v. Humphreys,* 160 S.W.2d 85, 86 (Tex.Civ.App.—San Antonio 1942, writ ref'd w.o.m.), we hold that any error in not requiring tender of the principal was harmless since the trial judge found that the usurious nature of the loan relieved the Williamses of any obligation to repay the $1,342.52.

Further, an examination of the record does not support Bantuelle's claim that no steps were taken by the Williamses to return even the undisputed amount of $1,342.52. The Williamses' attorney's testimony that Bantuelle refused to accept the return of the $1,342.52 was excluded by the court on the basis that it was an impeachment of their interrogatories. The Williamses' answers to Bantuelle's interrogatories reflect that they did not actually tender any money to Bantuelle, but that they had, on numerous occasions during the pendency of the litigation, offered to repay the $1,342.52 and that Bantuelle had refused to accept the money. The attorney's testimony that Bantuelle refused to accept offers to restore the consideration was not an impeachment of the Williamses' interrogatories that they did not make actual tender and was improperly excluded by the court. Bantuelle is correct in his assertion that one who seeks equity must do equity, *Sudderth,* 560 S.W.2d at 516; however, when one repeatedly refuses an offer to do equity, he cannot then complain that it was not done.

The judgment is affirmed.