

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00681-CV

**RBS MORTGAGE, LLC**,
Appellant

v.

Ramiro **GONZALEZ**, Jr.,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-01567
Honorable Larry Noll, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 27, 2013

AFFIRMED

RBS Mortgage, LLC appeals the trial court's judgment, rendered after a bench trial, arguing the trial court erred by declaring a lien on real property void and enjoining foreclosure. We affirm.

### BACKGROUND

In 2001, Ramiro Gonzalez Jr. ("Gonzalez") and his then wife, Filomena Gonzalez, purchased the vacant lots at 844 S. San Joaquin St., San Antonio, Texas, that are the subject of this cause. The next year, Gonzalez, a journeyman plumber and contractor, built a "bathroom

building" with a working toilet and lavatory and a small office and storage building and began construction on the house. Although the house was not complete, Gonzalez and two of his children moved into the house in 2005, and they all lived there continuously thereafter; other children lived there periodically.

In January 2007, Gonzalez began discussions with Roland B. Salazar, a principal with RBS Mortgage, LLC ("RBS"), about obtaining assistance in paying past-due taxes on the property. Salazar testified Gonzalez asked him for a loan to pay the taxes. Salazar stated he refused to make the loan, but offered to buy the property, pay the taxes, complete the house, and then give Gonzalez an opportunity to repurchase the property for the amount of the taxes plus the cost of the materials and labor. According to Salazar, Gonzalez accepted this offer and in February 2007, Salazar prepared a warranty deed in favor of RBS that Gonzalez and his wife executed on February 20, 2007.

Gonzalez testified he initially offered to do construction work for Salazar's construction business to earn the funds he would use to pay the taxes. He testified that Salazar rejected the proposal, but offered instead to help Gonzalez pay the taxes and let Gonzalez "work off" the amount Salazar paid. According to Gonzalez, Salazar never offered to buy the property and Gonzalez did not sell the property. Gonzalez admitted he signed the deed, but testified he held the deed until he received something in writing that ensured he was not losing his property.

At Gonzalez's request, RBS prepared a letter agreement dated May 23, 2007. The letter agreement provided:

> This letter has been drawn up to confirm an agreement between Mr. Ramiro Gonzales [sic] and RBS Mortgages, LLC. Mr. Ramiro Gonzales is the owner of an uncompleted house at 844 San Joaquin Street. This house needs extensive construction work in order to occupy it. Mr. Gonzales agrees to deed 844 San Joaquin Street property over to RBS Mortgages, LLC. In return, RBS Mortgages, LLC. agrees to payoff the overdue property taxes

> that are now over due. This will bring the property taxes to be current. In addition, RBS Enterprises, LLC. will complete the construction work on the unfinished home.
>
> After the completion of the unfinished home, RBS Mortgages, LLC., will make a mortgage note on the property to Ramiro Gonzales based on the final construction cost.

After this agreement was executed, Gonzalez and his wife delivered the warranty deed to RBS. Gonzalez testified he thought he was giving the warranty deed as security for a loan and RBS was to hold the deed in trust. RBS filed the deed of record without Gonzalez's knowledge or consent.

RBS paid the property taxes, settled a tax suit, and made improvements to the property. Gonzalez and his wife divorced in November 2007, but the divorce decree did not dispose of the property. According to Gonzalez, he and his wife agreed in the divorce he would retain the property and, although not formalized in the divorce decree, the parties abided by this agreement. Then in February 2008, Gonzalez executed a real estate lien note in the principal amount of $108,000 and a deed of trust to RBS concerning the property. RBS executed a warranty deed with vendor's lien, naming Gonzalez as grantee of the property.

Gonzalez did not make all of the payments due on the February 2008 note, and by July 2010, the arrearage was substantial. The parties agreed to add the arrearages to the remaining principal balance and to renew and extend the original note and deed of trust with a new principal amount of $125,000. The first two payments due under the July 1, 2010 renewal note were not timely made and the next two were not made at all. As a result, RBS posted the property for foreclosure sale on February 1, 2011. Gonzalez filed this suit on January 31, 2011 and the trial court issued a temporary restraining order prohibiting the sale.

Gonzalez alleged the note and deed of trust on his homestead were invalid under the Texas Constitution. He asserted claims for breach of contract and accounting, and sought a

declaratory judgment to hold the lien void, an order enjoining foreclosure, and an award of damages and attorney's fees. RBS filed a counterclaim for a declaratory judgment that its lien was valid, foreclosure of the lien, and for judgment on the note. After a non-jury trial, the trial court found the property was Gonzalez's homestead, he did not sell the property to RBS, and that the February 2007 warranty deed served only to secure a construction loan finalized by the May 2007 agreement with the equity in Gonzalez's homestead. The court concluded the February 2008 note, deed of trust, and warranty deed were executed for repayment of the construction loan and did not perfect a lien on the property because it was Gonzalez's homestead. The trial court rendered judgment on the note in favor of RBS, but held the lien on the property void and permanently enjoined foreclosure.

On appeal, RBS challenges the legal and factual sufficiency of the evidence to support the trial court's findings that Gonzalez did not sell the property to RBS in 2007 and that the property was Gonzalez's homestead when the note and deed of trust were executed in February 2008. RBS also argues that the doctrine of judicial estoppel precludes Gonzalez from asserting that the February 2007 deed did not evidence a sale of the property.

## STANDARD OF REVIEW

When, as in this case, findings of fact and a reporter's record have been filed, the court of appeals reviews the findings for legal and factual insufficiency of the evidence using the same standards applied to jury findings. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a legal sufficiency review, we consider the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded

people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence is legally insufficient only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails and must be overruled. *BMC Software*, 83 S.W.3d at 795. In evaluating a factual-sufficiency challenge, we consider and weigh all the evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We review *de novo* the trial court's legal conclusions based on the findings of fact to determine their correctness. *BMC Software*, 83 S.W.3d at 794.

In conducting our review, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within its exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence clearly would support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

#### DISCUSSION

*Was the 2007 Transaction a Loan or a Conveyance?*

The trial court found that the May 27, 2007 letter agreement finalized a construction loan and that the property was not sold or otherwise transferred by the February 20, 2007 warranty deed. That warranty deed was to be held in trust by RBS and was not delivered with the intent to

sell or transfer the property, but rather to secure a loan on the property. RBS challenges the legal and factual sufficiency of these findings.

Generally, title to transferred property vests upon execution and delivery of the deed. *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974). Proof that the deed has been filed of record gives rise to a presumption that the grantor delivered the deed with the intent to convey the property according to the terms of the deed. *Id*. at 261–62 (citing *Thornton v. Rains*, 157 Tex. 65, 68, 299 S.W.2d 287, 288 (1957)). This presumption may be overcome by showing (1) that the deed was delivered or recorded for a different purpose, (2) that fraud, accident, or mistake accompanied the delivery or recording, or (3) that the grantor had no intention of divesting himself of title. *Id*. at 262 (citing *Thornton*, 157 Tex. at 68, 299 S.W.2d at 288). The intent of the grantor in delivering the deed is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. *Id*. Moreover, it is well-settled that a deed absolute on its face may be construed as a mortgage if the evidence, including parol evidence, shows that such was the intention of the parties. *Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987); *Bantuelle v. Williams*, 667 S.W.2d 810, 815–16 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (citing *Wilbanks v. Wilbanks*, 160 Tex. 317, 319, 330 S.W.2d 607, 608 (1960); *Barrera v. Gonzalez*, 341 S.W.2d 703, 704 (Tex. Civ. App.—San Antonio 1960, writ ref'd n.r.e.)). The circumstances preceding, surrounding, and subsequent to the transaction may all be viewed in determining whether a transaction was truly intended as a fee simple transfer, or merely as a loan or a mortgage. *Bantuelle*, 667 S.W.2d at 816; *see Johnson*, 726 S.W.2d at 6 (true nature of instrument is resolved by ascertaining intent of parties as disclosed by contract, attending circumstances or both).

RBS proved it recorded the February 2007 warranty deed from Gonzalez to RBS and thus established the presumption that Gonzalez intended to convey the property according to the deed

terms. *See Stephens County Museum*, 517 S.W.2d at 261–62. The trial court found that Gonzalez did not intend to transfer the property, but rather, he intended to deliver the deed in trust to secure a loan. *See id.* at 262. We must examine all the facts and circumstances preceding, attending, and following the execution of the deed to determine whether a sufficient showing was made to overcome the presumption of delivery and to show the transaction was intended as a loan rather than a transfer. *See id.*; *see also Bantuelle*, 667 S.W.2d at 816.

Both parties rely primarily on the May 2007 agreement as evidence of their intent and both contend the agreement is unambiguous but assert different interpretations. In interpreting a written contract, our primary concern is to ascertain the intentions of the parties, as expressed in the instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996) (op. on reh'g). To accomplish this objective, we consider the entire writing and "harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). No single provision is to be given controlling effect; instead, all the provisions must be considered with reference to the whole instrument. *Id*. All language should be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). "[A] writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties." *Austin Co. v. Vaughn Bldg. Corp.*, 643 S.W.2d 113, 115 (Tex. 1982).

Deciding whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *Coker*, 650 S.W.2d at 394). A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Id*. at 231. In determining ambiguity, we look to the contract as a whole, in light of the circumstances present when the contract was executed. *Univ. Health Servs., Inc. v.*

*Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *see also Lenape Res. Corp.*, 925 S.W.2d at 574. An agreement is ambiguous when it is susceptible to more than one reasonable meaning after the application of established rules of construction. *Univ. Health Services*, 121 S.W.3d at 746. If the contract language can be given a certain or definite meaning, then the contract is not ambiguous and the court should interpret it as a matter of law. *Id.*

RBS claims the agreement required Gonzalez to convey the property to it and RBS was to pay the back taxes, complete the construction, and offer to sell the property back to Gonzalez for the construction costs with owner financing. Gonzalez claims RBS was to hold the deed in trust, pay the back taxes, complete construction of the house, and carry a note, secured by the property, for all tax payments and construction costs and he was to remain the owner of the property, and he and his children could occupy it at all times. We have considered the entire agreement, attempted to harmonize all of its provisions, and applied the other applicable rules of construction, but the plain language of the agreement does not divulge the intentions of the parties. Considering the agreement as a whole, in light of the circumstances when it was executed, including Gonzalez's explanation for insisting upon the agreement, and the genesis and function of the amortization schedules RBS provided to Gonzalez, we cannot give the contract language a certain or definite meaning. We agree with the trial court's implied conclusion that there are two or more reasonable interpretations of the agreement, and it is ambiguous. *See BMC Software*, 83 S.W.3d at 794; *Univ. Health Services*, 121 S.W.3d at 746. Furthermore, the trial court correctly construed the agreement against its author, RBS, and reached a reasonable result consistent with the apparent intent of the parties. *See Austin Co.*, 643 S.W.2d at 115.

Although the parties primarily assert their interpretations of the May 2007 agreement, we consider other facts and circumstances. *See Stephens County Museum*, 517 S.W.2d at 262; *Bantuelle*, 667 S.W.2d at 816. Salazar testified that RBS acquired the property for about $7500

in taxes when it was worth about $40,000. Gonzalez testified that, when he contacted RBS, he had $60,000-70,000 of construction costs in the house, the appraisal district valued the property at $71,000, and he would not have sold the property for $7,500. This significant disparity in the value of the property and the amount RBS allegedly paid for it indicates the transaction was a loan rather than a sale. *See Wilbanks*, 330 S.W.2d at 609.

RBS maintained that while it was the owner of the property, Gonzalez and his family did not live in the house at any time and photographs showed the house was uninhabitable. Salazar testified that from May 2007 until February 1, 2008, RBS acted as the owner and had sole possession and control of the property. Gonzalez asserted that his actions were consistent with a loan rather than a sale of the property. He testified that throughout the construction, he and his children lived in the house and photographs confirmed such. Moreover, during that period, Gonzalez did substantial construction work on the house and bought and installed substantial materials for which he paid. The question of Gonzalez's occupancy and possession, particularly during the construction by RBS, was extensively contested with both parties presenting several witnesses who testified in support of their respective positions. Retention of possession by Gonzalez is a circumstance indicating a mortgage and not a sale. *See Napper v. Johnson*, 464 S.W.2d 496, 498 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.).

RBS asserted as a significant after-the-transaction circumstance that Gonzalez represented in his November 2007 divorce decree that he had no real property or debts. Gonzalez explained that he did not mention a debt to RBS in the divorce decree because at that time there was no agreement as to the construction costs owed. Gonzalez further explained that he and his wife had other property and debts in addition to the San Joaquin property that were not mentioned in the divorce decree because they were not fighting over them and their attorney instructed them not to list them in the decree.

These and other facts and circumstances preceding, attending, and following the May 2007 transaction and execution of the February 2007 deed from Gonzalez to RBS were greatly disputed. It was within the exclusive province of the trial court to determine the credibility of the witnesses and the weight to be given to their testimony, and to resolve those conflicts in the evidence. *See City of Keller*, 168 S.W.3d at 819; *Stephens County Museum*, 517 S.W.2d at 262. Considering the evidence in the light most favorable to the trial court's findings, there is more than a scintilla of probative evidence to support the findings that the deed was not delivered to sell or transfer the property but was delivered to secure a loan. *See BMC Software*, 83 S.W.3d at 795; *Johnson*, 726 S.W.2d at 6; *Stephens County Museum*, 517 S.W.2d at 262 (delivery presumption overcome where deed delivered for different purpose or grantor had no intention of divesting himself of title); *Bantuelle*, 667 S.W.2d at 816. RBS's as-a-matter-of-law and no-evidence challenges are overruled. *See BMC Software*, 83 S.W.3d at 795; *Johnson*, 726 S.W.2d at 6; *Stephens County Museum*, 517 S.W.2d at 262; *Bantuelle*, 667 S.W.2d at 816. Moreover, considering all the evidence, the evidence is not so weak that these findings are clearly wrong and unjust. *See Dow Chemical*, 46 S.W.3d at 242; *Johnson*, 726 S.W.2d at 6; *Bantuelle*, 667 S.W.2d at 816; *Stephens County Museum*, 517 S.W.2d at 262. RBS's insufficient evidence challenges are overruled. RBS's issues 1 and 2 are overruled.

*Was the Property Gonzalez's Homestead?*

RBS asserts in issues 3 and 4 that there was legally and factually insufficient evidence that the property was Gonzalez's homestead when the note and deed of trust were executed on February 1, 2008. The trial court found that the property was Gonzalez's homestead protected by the homestead laws "at all times pertinent to this lawsuit," and the February 1, 2008 vendor's lien in the deed and the deed of trust were against Gonzalez's homestead and were void. RBS does not challenge these findings except it argues that the property could not be Gonzalez's

homestead even if he occupied it because RBS owned the property after he deeded the property to it in May 2007 until he repurchased the property on February 1, 2008. This assertion assumes that the May 2007 transaction was a sale of the property, rather than a loan, having the effect of Gonzalez alienating the property and owning no interest in it on February 1, 2008. *See Ramsey v. Davis*, 261 S.W.3d 811, 817 (Tex. App.—Dallas 2008, pet. denied) (property can only lose homestead status by abandonment, alienation, or death); *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied) (same). However, the trial court found the May 2007 transaction was a loan, not a sale, and that finding is supported by the evidence. Accordingly, Gonzalez did not alienate the property, and it remained his homestead at all times pertinent to this lawsuit. RBS's issues 3 and 4 are overruled.

*Judicial Estoppel*

In its issue 5, RBS claims Gonzalez's divorce decree is a sworn inconsistent statement in a prior judicial proceeding which, under the doctrine of judicial estoppel, precludes Gonzalez from asserting that the deed from Gonzalez to RBS was not actually a deed reflecting a sale, but rather was a mortgage or loan. It asserts the divorce decree was inconsistent in that it recited Gonzalez and his wife owned no real property, owed no debts, and made no mention of the San Joaquin property. Gonzalez "acknowledged his signature and agreement to the foregoing …" divorce decree before a notary. The trial court made no findings of fact or conclusions of law on RBS's judicial estoppel claim, and RBS requested no additional findings. *See Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) (stating elements of judicial estoppel).

When a trial court makes findings of fact and conclusions of law, the judgment may not be supported by an implied finding on any ground of recovery, or defense, of which no element has been included in the court's findings. Tex. R. Civ. P. 299; *Williams v. Gillespie*, 346 S.W.3d

727, 732 (Tex. App.—Texarkana 2011, no pet.) (citing *Leonard v. Eskew*, 731 S.W.2d 124, 132–33 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Uhlhorn v. Reid*, 398 S.W.2d 169, 176 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.)). When the court's findings do not address a defense and the party relying on the defense does not request additional findings, that defense is waived. *Nguyen v. Nguyen*, 355 S.W.3d 82, 92 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Levine v. Maverick County Water Control & Improvement Dist. No. 1*, 884 S.W.2d 790, 796 (Tex. App.—San Antonio 1994, writ denied); *Mbank Abilene, N.A. v. Westwood Energy, Inc.*, 723 S.W.2d 246, 253 (Tex. App.—Eastland 1986, no writ) (when trial court's findings failed to establish any element of bank's conversion theory and bank failed to request additional or amended findings, bank's appeal based on conversion was waived). RBS waived its judicial estoppel claim and we, therefore, overrule its issue 5.

## CONCLUSION

We have considered and overruled each of RBS's issues on appeal. Accordingly, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice