Richard W. JOHNSON, Petitioner,

v.

F.G. CHERRY, et al., Respondents.

No. C–5160.

Supreme Court of Texas.

Feb. 11, 1987.

Rehearing Denied April 15, 1987.

Bill Parker, Smead, Anderson, Wilcox & Dunn, Longview, for petitioner.

Jerry W. Hill and Mr. John M. Smith, Roberts-Harbour Law Firm, Longview, for respondents.

SPEARS, Justice.

Richard Johnson sued to cancel a deed given by him to F.G. Cherry and the Texas State Bank of Tatum on the ground that the deed was actually a constitutionally prohibited mortgage on Johnson's homestead. Based on jury findings, the trial court rendered judgment for Johnson cancelling the deed and awarding damages. The court of appeals reversed the judgment of the trial court. 703 S.W.2d 819. We reverse the court of appeals' judgment and remand this cause to the trial court.

In July 1974, Richard W. Johnson purchased 348 acres of land in Shelby County for $125,000 with his grantor reserving a vendor's lien on the property. Johnson moved onto the property and made improvements. In 1981 Johnson and his wife divorced, and Johnson purchased his wife's community interest in the property which was evidenced by a note. Later that same year, Johnson began to experience financial difficulties; his debts and obligations totaled nearly $120,000. Johnson fell behind in payments on the note to his former wife and in payments on the 348 acres and Johnson's grantor posted the land for foreclosure. At all times, Johnson claimed 200 acres of the 348 acres as his homestead.

During this period of financial straits, Johnson attempted to secure loans to help ease his indebtedness. Johnson was unable to obtain financing because of the property's homestead status. Johnson was introduced to F.G. Cherry who originally told Johnson that the Texas State Bank of Tatum could not lend him the necessary funds. Cherry, a feed store owner and a director of the Bank, allegedly told Johnson to contact him again if he was unable to find satisfactory financing elsewhere. Johnson again contacted Cherry as the foreclosure date neared, and Johnson claims Cherry "loaned" him money to cover his debts.

The following documents were executed by Johnson and Cherry in October 1981: (1) a general warranty deed from Johnson to Cherry and the Bank covering 348 acres in Shelby County; (2) a one-year lease agreement on the land from Cherry and the Bank to Johnson; (3) an option from Cherry to Johnson to repurchase the land. In return for the general warranty deed Johnson received $120,000 from Cherry, and Cherry assumed the $38,000 balance on the note to Johnson's former wife. The lease provided for two semi-annual payments of $12,510 each. Johnson could exercise his option on the acreage for $132,000 and reassumption of the note to his ex-wife. The option was open for six months following the conclusion of the leasehold and was conditioned upon Johnson making the two lease payments.

Johnson failed to make the second lease payment in October 1982 as required. In November 1982, Cherry and the Bank initiated eviction proceedings against Johnson. Johnson sued Cherry and the Bank, claiming that the transaction was a loan disguised as a sale and alleging usurious interest charges on the alleged loan. Cherry and the Bank claimed that the transaction was a sale.

The trial court instructed the jury that a "deed" means "an instrument in writing, duly executed and delivered, conveying real estate," and a "mortgage" is "an instrument in writing which does not dispose of the title to land, but only operates as security for a debt." The jury found that (1) the instrument was a mortgage; (2) $12,000 of the $132,000 repurchase price was a charge for lending money; (3) $20,000 of the $25,020 lease payment was a charge for lending money; and (4) attorney's fees should be awarded to Johnson.[1] The trial court rendered judgment that title to the 348 acres was vested in Johnson and awarded Johnson $9,612 with interest. The trial court *sua sponte* refused to enter a judgment for Cherry and the Bank for the money loaned. Cherry and the Bank appealed.

1. The question of usury has not been presented to this court and we express no opinion.

The court of appeals reversed the trial court's judgment and rendered judgment that Johnson take nothing. After reviewing the instruments signed by Johnson, the court of appeals held as a matter of law there was no debt owed by Johnson nor was Johnson under any obligation to repurchase the property. Without an enforceable obligation or debt, the deed could not be converted into a mortgage. The court refused to impute the existence of a debt based on Johnson's testimony and the jury findings. The court of appeals also disregarded the jury's usury findings since it held no loan or debt was established.

Johnson here contends his testimony that he and Cherry agreed the transaction was actually a mortgage is some evidence the transaction was a loan. Johnson further asserts that when there is some evidence of a loan or indebtedness combined with a finding of fact that the transaction was intended as a loan, the law should impute the existence of a debt, thereby creating a debtor/creditor relationship necessary to every mortgage.

The question of whether an instrument written as a deed is actually a deed or is in fact a mortgage is a question of fact. *Wilbanks v. Wilbanks,* 160 Tex. 317, 330 S.W.2d 607, 608 (1960); *Wells v. Hilburn,* 129 Tex. 11, 98 S.W.2d 177, 180 (1936). The true nature of the instrument is resolved by ascertaining the intent of the parties as disclosed by the contract or attending circumstances or both. *Wilbanks,* 330 S.W.2d at 608; *Wells,* 98 S.W.2d at 180. Even when the instrument appears on its face to be a deed absolute, parol evidence is admissible to show that the parties actually intended the instrument as a mortgage. *Wilbanks; Bradshaw v. McDonald,* 147 Tex. 455, 216 S.W.2d 972, 973 (1949). When there is a fact finding that the parties intended the transaction to be a loan, and that finding is supported by probative evidence, the law will impute the existence of a debt. *Wells,* 98 S.W.2d at 180; *Brannon v. Gartman,* 288 S.W. 817, 821 (Tex. Comm'n App.1926, holding approved). A mortgage of a homestead not expressly permitted by the Constitution is invalid. TEX. CONST. art. XVI, § 50.

At trial, Johnson testified he understood and intended the transaction to be a loan even though it was written as a sale. He stated that he was indebted to creditors for $118,516.84 of the $120,000 loaned. Johnson further testified that the option-to-repurchase price of $132,000 represented a $120,000 loan plus 10% interest. Cherry testified that the $12,000 represented a return on his money although the transaction was not a loan. Johnson also asserted that the $25,020 lease payment represented 9% interest on the $38,000 note to his ex-wife and 18% on the $120,000 loan.

A licensed real estate appraiser testified that Johnson's acreage with improvements was worth approximately $320,000 when Johnson conveyed the property to Cherry and that a lease on the property was worth at most $4,500 a year. The real estate appraiser also testified she suggested Johnson sell the property during his time of financial difficulties but that he declined her suggestion. Johnson's attorney prepared all the documents in dispute.

In determining there was no debt between Johnson and Cherry, and the deed therefore could not be converted into a mortgage, the court of appeals relied on an earlier court of appeals decision which has been expressly disapproved by this court and on a decision which had relied on the disapproved opinion. In holding the deed was not actually a mortgage, the court of appeals quoted from *McMurry v. Mercer,* 73 S.W.2d 1087 (Tex.Civ.App.—Dallas 1934, writ ref'd). In *McMurry,* three brothers testified that separate deeds given by each to Mercer were actually mortgages. The jury found the deeds were intended as mortgages, but the trial court granted a judgment n.o.v. On appeal, the *McMurry* court initially stated that parol evidence was inadmissible to contradict the plain language of the deeds, the notes given in return for the deeds, and the option to repurchase agreements made by Mercer. *Id.* at 1089. Based on this premise, the court then determined that there was no evidence of a debt to support the brothers'

contention that the transaction was a mortgage. The *McMurry* ruling that parol evidence was inadmissible was expressly disapproved by this court in *Bradshaw v. McDonald,* 216 S.W.2d at 976 (1949).

We also disapprove *Rosinbaum v. Billingsley,* 272 S.W.2d 591 (Tex.Civ.App. —Eastland 1954, writ ref'd n.r.e.), which cited *McMurry* as authority. In *Rosinbaum,* the court examined the disputed documents only and held that the contract was upon its face a sale and not a mortgage. The failure of *McMurry, Rosinbaum* and the court of appeals here is to recognize that testimony may constitute evidence of the parties' intention concerning the actual nature of the transaction and that the courts must look beyond the face of the deed to ascertain the parties' intent. *See Wilbanks,* 160 Tex. 317, 330 S.W.2d 607; *Bradshaw,* 147 Tex. 455, 216 S.W.2d 972.

We now address whether some evidence supports the jury's finding that Johnson and Cherry actually intended the deed as a mortgage. In addition to Johnson's testimony regarding his intentions, the evidence was that the repurchase price was exactly 10% more than the original price; the land was worth almost twice as much as the original "sale" price; the lease price equaled exactly 9% interest on the balance of the note to Johnson's ex-wife assumed by Cherry and 18% interest on the alleged purchase price; Johnson was indebted to other creditors for approximately $119,000 of the $120,000 he received from Cherry; Johnson was within one week of losing the land entirely; and Johnson had told a real estate agent he was not interested in listing his property for sale. Cherry testified that the transaction was intended as a deed and disputed some of Johnson's assertions. It is the province of the jury to weigh the inconsistent testimony and arrive at a conclusion. *Texas Employers Insurance Ass'n v. Page,* 553 S.W.2d 98, 102 (Tex.1977). Johnson's testimony and the testimony of the other witnesses constitute some evidence upon which the jury could base its

finding that the mortgage was disguised as a deed.

We find the reasoning of a recent court of appeals decision persuasive. In *Bantuelle v. Williams,* 667 S.W.2d 810 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) the Williamses claimed that a deed signed by them and given to Bantuelle was actually a constitutionally prohibited mortgage on their homestead. The Williamses testified that they intended the transaction as a loan, Bantuelle granted them an option to repurchase for $1000 more than he paid, and the option was exercisable within sixty days of the alleged sale. The trial court, as trier of fact, found that the transaction was a loan. In affirming the trial court's judgment, the court of appeals stated that when there is a finding that the transaction was intended as a loan, the law will impute the existence of a debt, thereby creating the relationship of debtor and creditor. *Id.* at 818.

The court in *Bantuelle* explicitly recognized that if only the documents in an apparent fee simple conveyance are examined, no debtor/creditor relationship will be found. The testimony of the parties about their intentions regarding the nature of the transaction plus other evidence adduced from the circumstances surrounding the transaction as here, an option to repurchase, depressed sale price, and the parties' conversations with other witnesses, are relevant in ascertaining the true meaning the parties attributed to the contract.

When there is a finding supported by some probative evidence that a disputed transaction, although written as a deed, is actually a mortgage, the law will impute the existence of an enforceable debt, thereby creating the debtor/creditor relationship necessary to every mortgage. Based on the evidence at trial and on the jury's findings, we impute a debt owed by Johnson to Cherry and the mortgage on Johnson's homestead is null and void.

The next question is whether this court should grant a judgment to Cherry and the Bank in the amount loaned to Johnson. The trial court refused *sua sponte* to exer-

cise its equitable powers do so.[2] Johnson asserts that because Cherry and the Bank did not plead that they were entitled to a money judgment nor request the trial court to exercise its equitable power to award the judgment, they may not now invoke the equitable powers of this court. Cherry and the Bank argue that they should be granted a judgment and lien against the property and that Johnson should have pleaded that he was willing to repay the money loaned to him. We agree with Cherry.

■ Restoration or an offer to restore consideration received by one seeking to cancel a deed is a condition precedent to maintaining a suit for cancellation of an instrument. *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83, 91 (1955). *Cf. Wells v. Hillborn*, 98 S.W.2d at 180–81. The equitable power of the court exists to do fairness and is flexible and adaptable to particular exigencies, "so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *See Warren v. Osborne*, 154 S.W.2d 944, 946 (Tex.Civ.App.—Texarkana 1941, writ ref'd). In his testimony at trial Johnson admitted that he was indebted to Cherry and the Bank for the $120,000 loan and for paying the $38,000 balance owed to his former wife. During oral argument, Johnson's attorney stated that Johnson was willing to acknowledge a lien in favor of Cherry.

We are persuaded by the reasoning of another decision involving a suit to convert a deed into a mortgage. *See Sudderth v. Howard*, 560 S.W.2d 511 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). In *Sudderth*, as here, the plaintiff was successful in establishing that the transaction was a mortgage. The unsuccessful defendant had failed to plead that he was entitled to a judgment equal to the amount of the loan plus interest. In affirming the trial court's award to the defendant, the court stated that Sudderth:

persuaded the jury that the transaction was not intended as a sale, thereby securing a cancellation of their deed. It is axiomatic that he who seeks equity must do equity, and one seeking cancellation of an instrument cannot repudiate it and retain the benefits therefrom; he should offer or tender a restoration and the court can accomplish that result by its judgment.

*Id.* at 516.

■ An offer by Johnson to repay the loan was a condition precedent to his suit to convert the deed into a mortgage. Although Johnson failed to offer repayment, Cherry did not complain of Johnson's error until he was before the court of appeals. But equity regards that which should be done as done. In order for equity to convert the deed into a mortgage, equity must also award judgment equal to the amount owed to Cherry. Johnson is indebted to Cherry for the $120,000 loaned, for the $38,000 note to his ex-wife which Cherry has paid in full, and for interest. We, therefore, remand this cause to the trial court for a determination of the amount Johnson must reimburse Cherry. We further create a lien in favor of Cherry against Johnson's 148 acres in Shelby County not covered under the homestead exemption. *See* TEX. CONST. art. XVI, § 50; TEX.PROP.CODE ANN. § 41.001–.002 (Vernon Supp.1986).

Accordingly, we reverse the judgment of the court of appeals, render judgment vesting title to the property in Johnson and remand the cause to the trial court to determine the amounts Johnson must reimburse Cherry and the bank for monies advanced and for interest thereon.

---

2. The court of appeals did not address the question of awarding a judgment to Cherry presumably since it found the transaction was a sale. The exercise of our equitable power is discretionary, and even though the court of appeals did not address this question, we have jurisdiction to decide it. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634 (Tex.1986); *McKelvy v. Barber*, 381 S.W.2d 59, 64 (Tex.1964).