**Eveline STRAITE, Appellant,**

v.

**Leonard M. KRISMAN, et ux, Appellee.**

**No. A14–86–454–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 13, 1987.

Joseph W. Ryan, John A. Davis, Jr., Houston, for appellant.

Joe R. Blackburn, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This appeal arises from a suit brought by appellant, Eveline Straite, against appellees, Leonard and Marjorie Krisman, for cancellation of a deed on the ground that the deed was given to secure a constitutionally prohibited mortgage of a homestead. The cause was submitted to the jury on five special issues. Upon appellees' motion, the trial disregarded the jury's answer to Special Issue No. 1 and entered judgment for appellees.

In four points of error, appellant complains of error by the trial court (1) in disregarding the jury's answer to Special Issue No. 1; (2) in failing to enter judgment for appellant for damages as found by the jury; and (3) in refusing to submit appellant's special issues on exemplary damages. We find error in the judgment and, accordingly, reverse the trial court's judgment and remand the cause for new trial.

The evidence at trial indicated that in 1978, appellant purchased a home in Houston for $74,500. She made a cash down payment of $40,000 and assumed an existing mortgage. The mortgage payments were $468 per month. Her son, Stann Straite, agreed to make the mortgage payments, and he and his wife and children lived with appellant in the home.

In early 1980, the mortgage became delinquent, and the lienholder was threatening foreclosure. Stann Straite attempted to obtain a loan from appellee, Mr. Krisman. A transaction was subsequently worked out where appellant received $15,000 in exchange for executing a deed to her home to appellees. The deed was executed pursuant to an earnest money contract, which provided that appellant agreed to sell her home to appellees for $50,770: $15,000 in cash to be paid at closing and assumption of the existing mortgage ($35,770) by appellees.

Appellant and her son remained in possession of the house after closing, and approximately three weeks later, Stann Straite entered into a one-year lease of the house from appellees. The lease also contained a repurchase option, which allowed Stann Straite to repurchase the house for $56,000 after six months but before expiration of the lease.

Approximately three months later, appellees brought an eviction suit against the Straites for nonpayment of rent. Appellant was subsequently evicted from her home on July 17, 1980.

Appellant then filed suit against appellees for (1) cancellation of the deed; (2) damages for wrongful eviction; and (3) exemplary damages. Appellees filed a "cross action" for slander of title or, in the alternative, for repayment of the loan made to appellant plus monies expended on maintenance and upkeep of the mortgage on the property. Appellant filed an answer to appellees' "cross action" and additionally pleaded that appellees had committed usury.

The case was tried before a jury, which made the following findings in response to special issues:

*Special Issue No. 1*

Do you find from a preponderance of the evidence that the true intent of the parties, Eveline Straite and Leonard and Marjorie Krisman, was that the deed and option to repurchase was not a sale of the house in question?

Answer: "It was not a sale"

or

"It was a sale". ·

Answer: "It was not a sale."

*Special Issue No. 2*

Do you find from a preponderance of the evidence that the eviction of Eveline Straite from her homestead by Leonard and Marjorie Krisman was a proximate cause of damages to her?

Answer: "We do" or "We do not".

Answer: "We do not."

*Special Issue No. 3*

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Eveline Straite for her damages, if any, resulting from the occurrence in question.

.    .    .    .    .

(a) Reasonable rental value of her homestead from the date of her eviction through time of trial.

Answer: $50,000

(b) The actual worth or value to Eveline Straite of her household goods, clothing and personal effects at the time of their loss.

Answer: $ 0

(c) Mental anguish suffered by Eveline Straite from the date of her eviction through the time of trial.

Answer: $25,000

*Special Issue No. 4*

Find from a preponderance of the evidence the principal amount of the loan, if any, made by Mr. and Mrs. Krisman to Eveline Straite.

Answer in dollars and cents, if any.

Answer: $ 0

*Special Issue No. 5*

Find from a preponderance of the evidence the amount of interest, if any, contracted for or charged by Mr. and Mrs. Krisman for the loan, if any, to Eveline Straite.

You are instructed that in answering Special Issue No. 5 that "INTEREST" is defined as compensation for the use or forebearance or detention of money.

Answer in dollars and cents, if any.

Answer: $ 0

Both parties moved for judgment. In appellees' motion for entry of judgment, they asserted two alternative reasons for judgment: (1) that the jury's answer to Special Issue No. 1 was not supported by any evidence and, therefore, should be disregarded; or (2) that the jury's answer to Special Issue No. 1 was in conflict with the remaining answers to special issues and, therefore, should be disregarded. The trial court disregarded the jury's answer to Spe-

cial Issue No. 1 and rendered judgment for appellees. This appeal followed.

In point of error one, appellant contends that the trial court erred in disregarding the jury's answer to Special Issue No. 1 and in rendering judgment for appellees because the jury's answer to that issue is supported by some evidence. We agree.

■ When the jury's answers to special issues have any support in the evidence, the trial judge may not disregard the jury's answers. *Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 214 (Tex.App.—Houston [14th Dist.] 1984, no writ). This is true even though the great weight and preponderance of the evidence may be to the contrary. *Id.* Thus, the issue raised by point of error one is whether there is some evidence in the record to support the jury's finding that the parties did not intend the transaction to be a sale.

■ After reviewing the record, we find that there is some evidence to support the jury's answer to Special Issue No. 1. Appellant testified that she did not intend to sell her home to appellees. Further, she testified that, as she understood the transaction, her son was obtaining a $15,000 loan from appellees to catch up on the mortgage payments and she was to give them a second mortgage against her homestead to secure payment of that loan. We find that the trial court erred in disregarding the jury's answer to Special Issue No. 1. Consequently, we sustain point of error one. However, in giving effect to Special Issue No. 1, we find that we are faced with the issue of whether the jury's answer to Special Issue No. 1 fatally conflicts with the answers to Special Issues Nos. 4 and 5.

In *Little Rock Furniture Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (1949), the court stated that in applying the test to determine whether answers to special issues fatally conflict,

the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other

would require a judgment in favor of the defendant, then the answers are fatally in conflict.

*Id.* 222 S.W.2d at 991.

Here, if we disregard the answer to Special Issue No. 1, judgment would be in favor of appellees. If we disregard the answers to Special Issues Nos. 4 and 5, judgment would be in favor of appellant. Thus, we conclude that the answers to the special issues conflict.

■ However, our inquiry does not stop here. The court is under a duty to reconcile conflicting jury findings if reasonably possible in light of the pleadings and evidence, the manner in which issues were submitted, and in view of other findings when considered as a whole. *Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 933 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

In point of error two, appellant argues that the issues do not fatally conflict. She contends that "the jury's implied finding that there was no loan made by Mr. and Mrs. Krisman to *Mrs. Straite* does not constitute an implied finding that there was no loan made by Mr. and Mrs. Krisman to *Stann Straite.*" (emphasis added). Because a deed intended as a mortgage may be given to secure a debt of a third person, *Wilbanks v. Wilbanks,* 160 Tex. 317, 330 S.W.2d 607, 608 (1960), appellant argues that we may imply the existence of a debt between appellees and appellant's son that is secured by a constitutionally prohibited mortgage on appellant's homestead. Appellant argues that this implied finding is reasonable in light of the evidence and the pleadings, which stated: "the purported warranty deed was in fact intended by Plaintiff as a mortgage to secure a loan from Leonard and Marjorie Krisman to Plaintiff's son, Stan C. Straite." Appellant further argues that Special Issues Nos. 4 and 5 were submitted for a recovery on her usury cause of action and thus the answers do not fatally conflict with the answer to Special Issue No. 1. We disagree.

■ First, essential to every mortgage is the existence of the debtor/creditor relationship. *Johnson v. Cherry,* 726 S.W.2d 4, 7 (Tex.1987). When there is a finding supported by some probative evidence that a disputed transaction, although written as a deed, is actually a mortgage, the law will impute the existence of an enforceable debt, thereby creating that necessary relationship. *Id.*

Here, however, the issue of whether there was a loan between appellant and appellees was presented to the jury in Special Issues Nos. 4 and 5. By its answers, the jury failed to find that a loan existed between the parties. We cannot impute the existence of an enforceable debt between the parties after the issue has been addressed by the jury.

■ Nor can we reconcile the conflicting findings on the basis suggested by appellant, that is, by implying the existence of a debt between appellant's son and appellees that is secured by a mortgage on appellant's homestead. To imply such a finding would run contrary to the equity principles discussed in *Johnson.* In *Johnson,* after holding that the law will impute the existence of an enforceable debt when there is a finding supported by some probative evidence that a disputed transaction is actually a mortgage, the court further stated that in order for equity to convert the deed into a mortgage, equity must also award judgment equal to the amount owed the creditor. *Id.* at 8.

Here, we cannot reconcile the findings on the basis suggested by appellant and still follow the law announced in *Johnson.* We cannot imply the existence of an enforceable debt between appellees and appellant's son and then award a judgment against appellant's son in the amount owed appellees. Appellant's son is not a party to this cause. Consequently, the basis offered by appellant for reconciliation of the jury findings is not reasonable in view of the rule announced in *Johnson.*

Thus, we conclude that the answers to the special issues fatally conflict and cannot be reconciled. When there is a fatal conflict in the jury's answers to special issues, the judgment on a verdict containing such a conflict must be set aside. *Lit-*

*tle Rock Furniture Manufacturing Co.,* 222 S.W.2d at 991; *Olin Corp.,* 673 S.W.2d at 215. Therefore, we reverse the judgment of the trial court and remand the cause for new trial. In view of our holding, we need not address appellant's remaining points of error.