NUMBER 13-00-690-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS
 CHRISTI

 



 

RAFAEL
D. ALVARADO AND

MANUELA ALVARADO,                                                       Appellants,

 

                                                   v.

 

R.A.
ALVARADO, ALFONSO IBANEZ

AND GLORIA IBANEZ,                                                           Appellees.

 



 

                        On appeal from the 206th District Court

                                  of Hidalgo
 County, Texas.

 

 



                                   O P I N I O N

 

          Before Chief Justice Valdez
and Justices Yañez and Castillo

                                  Opinion by
Justice Castillo

 










This appeal
arises from a suit to quiet title. 
Rafael D. and his wife Manuela Alvarado (Athe Alvarados@) appeal a
take-nothing judgment entered following a bench trial.  By three issues, appellants urge that: (1)
the judgment is contrary to the greater weight and preponderance of the
evidence; (2) equity demands that they recover their homestead; and (3) the
trial court erred in excluding parole evidence regarding their intent.  We reverse and remand. 



Factual Background

Appellants were
incarcerated in Hidalgo County jail pursuant
to a warrant issued by the State of Ohio for a drug
possession offense.  While incarcerated,
they sought their release on bail. 
Unable to secure the money to meet the bond requirement, they signed a
document entitled Awarranty deed,@ purporting to
convey their homestead, located in McAllen, to their son,
R.A. Alvarado (AR.A.@), while
reserving the mortgage obligation on the property.[1]  








R.A. met with
attorney Alfonso Ibanez (AIbanez@) pursuant to
his parents= request that
he secure their release from jail.  Ibanez,
who was Mrs. Alvarado=s cousin, had
been the Alvarados= attorney in other criminal matters.  When R.A. could not meet Ibanez=s $20,000
request for funds to release his parents on bail, R.A. paid Ibanez $2,500 in
cash and signed a document that he believed made the property collateral.[2]  He then signed a
warranty deed conveying the homestead to Ibanez and his wife.  R.A. believed that this transfer to Ibanez
was solely for the purpose of collateral for the $20,000 in bail bonds that
Ibanez had told him was needed immediately.[3]

The Alvarados were subsequently released from Hidalgo County jail on bond.
They were required to vacate the property and, thereafter, answered to the Ohio criminal
charges and served jail time, although Ibanez did not represent them
there.  At the time of trial, the sister
of Gloria Ibanez was residing on the premises. 
By this lawsuit, the Alvarados sought to
reacquire their homestead.

Issues Presented 

The Alvarados present three issues in this case.  In their first issue, the Alvarados
claim that the trial court erred in granting judgment for the defendant because
the judgment was contrary to the great weight and preponderance of the evidence
submitted.  In their second issue
presented, they argue that the trial court should have granted them equitable
relief because Aequity demanded@ that they
recover their homestead property.  In
their third point of error, the Alvarados assert that
the trial court erred in excluding parol evidence
offered by the appellants to prove their case. 









Findings of Fact and Conclusions of Law

Following trial
to the bench, the trial court signed the final judgment on August 11, 2000. 
When a final judgment is issued following a bench trial, either party
may request that the trial court issue findings of fact and conclusions of
law.  See Tex. R. Civ. P. 296. 
The Alvarados timely made a request for
findings of fact and conclusions of law on August
 23, 2000, but the trial court failed to provide these requested
findings.  When a trial court fails to
provide findings of fact and conclusions of law pursuant to a request by one of
the parties, that party must file in the trial court a notice of past due
findings of fact and conclusions of law in order to preserve error.  Tex.
R. Civ. P. 297.  The Alvarados timely filed their notice of past due findings
of fact and conclusions of law on September
 18, 2000.   Although proposed
findings of fact and conclusions of law were filed with the trial court by the appellee, the court never issued its own findings of fact
and conclusions of law.








Where a party
has filed a request for findings of fact and conclusions of law and then filed
a notice of overdue findings of fact, the trial court has a mandatory duty to
issue those findings and conclusions.  Cherne Indus., Inc. v. Magallanes,
763 S.W.2d 768, 772 (Tex. 1989); Humphrey
v. Camelot Ret. Cmty., 893 S.W.2d 55, 61 (Tex.
App.BCorpus Christi
1994, no writ).  In such a circumstance,
the failure of the trial court to respond is presumed harmful, unless the
record before the appellate court affirmatively demonstrates that the party
complaining of the failure to file findings of fact has suffered no
injury.  Tenery
v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996).  The central question in this harm analysis is
whether the circumstances of the particular case would force the appellant to
guess the reason or reasons that the trial court ruled against it.  Humphrey, 893 S.W.2d at 61 (citing Sheldon
Pollack Corp. v. Pioneer Concrete Corp., 765 S.W.2d 843, 845 (Tex. App.BDallas 1989,
writ denied)).  When the trial court=s reasons for
its judgment are apparent from the record, the presumption of harm is
rebutted.  See Guzman v. Guzman,
827 S.W.2d 445, 447 (Tex. App.BCorpus Christi
1992), writ dism=d improv. granted, 843 S.W.2d 486 (Tex. 1992) (holding
that the court=s reasons for
its judgment were apparent when appellant=s complaint
addressed only one issue and raised only one dispute).  








We find that
there was no harm in the present case. 
The Alvarados did not raise an issue in their
brief complaining that the failure of the trial court to issue findings of fact
prevented them from presenting issues on appeal.  Indeed, they bring a challenge to the
sufficiency of the evidence, and brief this court on that issue, without the
benefit of the trial court=s findings of
fact.  Further, in the present case, the
grounds for the trial court=s ruling were
unambiguous.  The Alvarados
brought suit arguing that the property transfer was made for the purpose of
securing a mortgage loan from the appellee, in order
to pay for legal expenses that Ibanez provided. 
They presented evidence at the bench trial to demonstrate this
fact.  The Ibanezes
argued that the transfers were straightforward and fee simple title was transferred
in payment of the legal expenses. 
Therefore, we may rule on the merits of this case without the need to
order the trial court to issue findings of fact and conclusions of law in
compliance with rule 297 of the rules of civil procedure.  Tex.
R. Civ. P. 297.

Standing

In their brief,
the Ibanezes raise an argument that the trial court
judgment should be affirmed because the Alvarados had
no standing to bring this suit, since they lacked privity
of contract with him.  We disagree.

We begin by noting
that this argument was properly raised by the Ibanezes
on appeal.  Standing, as a necessary
component of subject matter jurisdiction, is essential to the authority of a
court to decide a case, cannot be waived, and thus the lack thereof may be
raised for the first time on appeal.  Waco Indep. Sch. Dist. v. Gibson,  22 S.W.3d 849, 851 (Tex. 2000). 








In support of
this argument, the Ibanezes point out that the
transfer of the deed to the property was a result of a transaction between the Ibanezes and R.A. Alvarado only.  We agree that there was arguably no privity of contract between the Ibanezes
and the Alvarados, vis-a-vis
the transfer of title.  However, standing
in a suit to quiet title is held by a party when they can show a justiciable interest in the property.  Bell v. Ott,
606 S.W.2d 942, 953 (Tex. Civ. App.BWaco 1980, writ
ref=d n.r.e.).  A party may
establish its interest by one of four methods: (1) title emanating from its
sovereignty over the soil; (2) superior title emanating from both parties= receipt of
title from a common source; (3) adverse possession; or (4) possession of the
land prior to the other party=s
possession.  Mitchell v. Mesa
Petroleum Co., 594 S.W.2d 507, 509 (Tex. Civ.
App.BSan Antonio
1979, writ ref=d n.r.e.).  Here, the Alvarados established that they held title and possessed
the land prior to the time it was transferred to Ibanez and further
demonstrated by means of their testimony and the testimony of R.A. that they
did not intend to relinquish their interest in the land by means of the first
conveyance.  Therefore, they have
standing, through their claim of retained interest in the land, to challenge
the Ibanezes= claim that the
transfer from R.A. to Ibanez was a transfer in fee simple rather than a
mortgage of the property.  



First Issue

In their first
issue, appellants urge that the trial court erred in granting judgment in favor
of the defendants because it was contrary to the great weight and preponderance
of the evidence presented.  We construe
this issue to be a challenge to the factual sufficiency of the evidence.  The issue of factual sufficiency in this case
is singular: the Alvarados claimed that the
transactions between the parties constituted a mortgage of the property, and
the Ibanezes contended that the transaction was a
full transfer of title in fee simple. 
The trial court=s finding for
the Ibanezes thus constituted a finding of fact that
the transaction constituted a transfer of title in fee simple, and not a
mortgage.  

A mortgage
involving real property is 

an executed
contract in which the legal or equitable owner of the property pledges the
title thereto as security for performance of an obligation . . . .  Although mortgages have been characterized as
conveyances, a mortgage is not a >deed= as the term is
ordinarily used in real property transactions, nor does a mortgage dispose of
the title to the property as does a deed.








30 Tex. Jur. 3d  Deeds of Trust and Mortgages ' 1 (1998).  The word Atransfer@ as it is associated with transference of
title means Athat [the]
owner of [the] property delivers it to another person with intent of passing
rights that he had in it to [the] latter.@  59 Tex.
Jur. 3d  Property ' 12
(1999).  

 The Alvarados
contend that the evidence clearly demonstrated that the two transactions
involved in this case were intended to convey a mortgage to the Ibanezes to secure the payment of bail bonds and attorney=s fees related
to the bailment, not a transfer of title. 
In support of this argument, they showed that much of Ibanez=s fees accrued
for legal services had been paid, the $20,000 attorney fee was expressly for
bail security, and the bonds were made by a professional bonding company.[4]  The appellees counter that the evidence was sufficient to
support the finding that the parties intended each transaction to be a
conveyance for the purpose of paying legal fees for services and not a
mortgage.[5] 

Standard of Review










In considering
a factual sufficiency issue, we must review all the evidence in the
record.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996).  We will overturn a trial court=s factual
findings only if the challenged findings are so against the great weight and
preponderance of the evidence as to be manifestly unjust.  Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex. 1998).   If those factual findings are found to be
against the great weight and preponderance of the evidence, we must set aside
the verdict and remand the cause for a new trial.  In re King=s Estate, 244 S.W.2d
660, 661 (Tex. 1951).  We review a factual sufficiency issue in a
bench trial using the same standard that we use in reviewing factual
sufficiency following a jury verdict.  K.C.
Roofing Co., Inc. v. Abundis, 940 S.W.2d 375, 377
(Tex. App.BSan Antonio
1997, writ denied).  

In the case of
a bench trial, a review of factual sufficiency involves reviewing the trial
court=s findings of
fact.  When those findings of fact are
missing, as they are in the present case, we will presume that the trial court
found all fact questions in support of the judgment.  IKB Indus. v. Pro-Line Corp., 938
S.W.2d 440, 445 (Tex. 1997).  We will affirm the trial court judgment on
any legal theory that finds support in the pleadings and the evidence.  Id.

The Warranty Deeds

1. From the Alvarados to R.A.








The Ibanezes rely primarily on the two written deeds
documenting the transfer of property, the first from the Alvarados
to R.A. and the second from R.A. to the Ibanezes, to
buttress their claim of title to the land. 
In construing whether a property transaction was in fact a transfer of
title or merely a mortgage of the property, we must ascertain the true intent
of the parties.  Johnson v. Cherry,
726 S.W.2d 4, 6 (Tex. 1987).  Thus, we must look to whether the Alvarados and R.A. intended the first transaction to be a
transfer of title, and then must look to whether R.A. and the Ibanezes intended the second transaction to be a title
transfer.  

In a written
transaction, there is a presumption that the documents themselves reflect the
true intent of the parties.  Perry v.
Long, 222 S.W.2d 460, 465 (Tex. Civ. App.BDallas 1949,
writ ref=d).  However, this presumption may be overcome by parol testimony.  Bantuelle v. Williams, 667 S.W.2d 810, 815-16
(Tex. App.BDallas 1983,
writ ref=d n.r.e.).  A transfer
of title that is absolute on its face may nonetheless be shown to have been
intended as a mortgage given to secure a debt. 
Id.  The circumstances preceding, surrounding,
and subsequent to the transaction may all be viewed in determining whether a
transaction was truly intended as a fee simple transfer, or merely as a loan or
a mortgage.  Id. at 816.








For example, in
Johnson v. Cherry, Johnson fell heavily into debt and attempted
unsuccessfully to obtain loans from several sources.  Johnson, 726 S.W.2d at 5.  Facing the possibility of foreclosure on his
348 acres, he turned to F.G. Cherry, director of the Texas State Bank of Tatum
and the owner and operator of a feed store. 
Id.  Cherry initially refused to grant Johnson
a loan as director of the Bank of Tatum, but subsequently agreed to provide
Johnson with the funds.  Id.  The parties executed three documents, a
general warranty deed purporting to transfer title from Johnson to Cherry and
the Bank, a one-year lease agreement leasing the land to Johnson for a
specified sum, and an option given to Johnson to repurchase the land provided
that he made the scheduled lease payments to Cherry.  Id.  Johnson failed to make his scheduled
payment, and Cherry evicted Johnson from the land, and Johnson sued claiming
title to the land.  Id.  Johnson claimed that the transaction was
intended as a mortgage, and the jury returned a verdict in Johnson=s favor.  Id.  The court of appeals reversed, holding
that because there was no debt owed by Johnson to Cherry, the deed could not be
construed as a mortgage.  Cherry v.
Johnson, 703 S.W.2d 819, 822 (Tex. App.BEastland 1986), rev=d, 726 S.W.2d 4
(Tex. 1987).  The Texas Supreme Court reversed the ruling
made by the court of appeals, finding that the circumstances surrounding the
transaction made it clear that the parties intended the transaction to be a
mortgage, despite the language of the deed apparently conveying the property in
fee simple.  Johnson v. Cherry,
726 S.W.2d at 5. 

Similarly, the
evidence in this case evidences the fact that the parties to the first
transaction, the Alvarados and R.A., did not intend
their transaction to constitute a transfer of fee simple title.  The uncontradicted
evidence before the trial court was that an attorney (not Ibanez) prepared a
warranty deed to reflect the conveyance of the Alvarado homestead to their son,
R.A. The deed did not convey the financial obligation; rather, it referred to a
wraparound note, allowing R.A. to cure any default in payment.  The deed states that AGrantee in this
deed does not assume payment@ of the Alvarados= $31,661.08
promissory note and Ais made subject
to the prior lien of a deed of trust.@  There is no evidence that a wraparound note
was executed.








Moreover, the
attorney who prepared the deed appeared at the jail with the warranty deed
unaccompanied by a notary public. Appearing separately, Mr. Alvarado signed
first and then Mrs. Alvarado signed.  The
attorney took the document with him upon parting company with the Alvarados. The document reflects that Francisco Dimas, a notary public, signed the acknowledgment on the
deed certifying that the Ainstrument was
acknowledged before@ him, even
though in fact the Alvarados did not sign the
document in front of the notary.[6]  The deed was dated, signed, and acknowledged
on March 10, 1998 and filed on March 11, 1998. 
No evidence was adduced regarding payment of that attorney=s fees for his
legal services.








The undisputed
evidence before the trial court was that the conveyance from the Alvarados to R.A. was to secure financing for the purposes
of paying the bond to secure their release from jail.  R.A. testified that his conveyance to Ibanez
was intended as collateral for payment of $20,000.00 in attorney=s fees.  R.A. further testified that he had previously
paid Ibanez $2,500.00 in fees.  The
senior Mr. Alvarado paid Ibanez $13,500.00. 
Ibanez did not represent the Alvarados in the Ohio criminal
case.  There is no evidence of an
agreement between the Alvarados and Ibanez regarding
attorney=s fees and
representation.  Although she knew Ibanez
did not practice in Ohio, Gloria Ibanez
had no personal knowledge of the services Ibanez rendered to or on behalf of
the Alvarados. 
According to Mr. Alvarado, for each Acourt,@ Ibanez was to charge $2,000.00. 

The Alvarados testified that their intent was to have R.A. use
the property as collateral to obtain a loan to pay their bonds.  R.A. testified that he understood the
conveyance was intended only to allow him to use it to obtain a loan to secure
his parents= release from
jail.  Although the title transfer deed
states that consideration was Aten dollars and
other valuable consideration,@ R.A. testified
that he paid nothing to his parents for the transfer of the home.  

The only
evidence proffered by the Ibanezes regarding this
transaction was the warranty deed conveying the property from the Alvarados to R.A.



2. From R.A. to Ibanez 

The evidence in
this case also clearly favors interpreting the contract between R.A. and Ibanez
as a mortgage of the house and not a transfer in fee simple.  The uncontradicted
evidence before the trial court was that R.A. visited the law office of Ibanez
for the purpose of obtaining the release of his parents from jail.  According to R.A., Ibanez informed him that
his parents would be in jail for twenty to thirty years. Although he had
already paid Ibanez $2,500.00, when notified of the $20,000.00 fee, R.A. signed
a document he thought would provide collateral for the fee.








Upon referral
by Ibanez, R.A. visited the law office of Armando Puente, who provided him with
what he believed to be a document memorializing that the property was
collateral for the legal fee. The document he signed is entitled Awarranty deed,@ conveying the
property to AAlfonso Ibanez and
wife, Gloria Ibanez@ (emphasis
added).  R.A. acknowledged his signature
thereon.  The notary signature is that of
Armando Puente.  The document shows it
was prepared by the ALaw Office of
Alfonso Ibanez@ and after
recording should be returned to the same. The deed was dated and signed on March 25, 1998 and filed of record on April 7, 1998. The conveyance occurred within fifteen
days of the Alvarados= conveyance to R.A. No evidence was
adduced regarding payment of Mr. Puente=s legal fees.

The Alvarados
both testified that they did not receive any statements from Ibanez regarding
his services and fees.  The Ibanezes offered into evidence a document dated April 6, 1998, drawn up by Ibanez and detailing the
legal fees charged to date. This document was introduced by agreement.[7]  At trial, Mr.
Alvarado denied having seen the statement before.  Mrs. Alvarado denied having received a bill
from Ibanez as well.

 In that document, entitled statement of
professional fees and services, the total amount charged by Ibanez was
$45,000.00, including $20,000 in cash used as a bail bond to secure the release
of the Alvarados from jail.  This document stated that the total had been
paid by transfer of the Alvarados= residence to
Ibanez.        

The Ibanezes proffered no other evidence to the trial court
regarding the transfer from R.A. to Ibanez. 
The warranty deed purporting to convey title to Ibanez was introduced
into evidence by the Alvarados.  








The evidence at
trial clearly demonstrates that the Alvarados never
intended to transfer title to R.A. for any purpose other than to obtain a
mortgage on the land.  Further, the trial
testimony of R.A. indicates that his intent was to obtain a mortgage on the
property, not to transfer full title to the land.  In light of the evidence adduced at trial, we
find that the judgment of the trial court was contrary to the great weight and
preponderance of the evidence.[8]  

Remaining Points of Error

Because the Alvarados= first point of
error is dispositive in this case, we do not address
appellants= remaining
points of error numbers two and three.  See
Tex. R. App. P. 47.1.  

Conclusion

For the
foregoing reasons, we reverse the take-nothing judgment entered by the trial
court and remand for a new trial.  

                                                                            ERRLINDA
CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.3(b).

 

Opinion delivered and filed

this 30th day of 
May, 2002.











[1] R.A.
was a defendant below who proceeded pro se. The other defendants below
were attorney Alfonso Ibanez and his wife Gloria Ibanez (Athe
Ibanezes@).  R.A. Alvarado did not submit an appellate
brief to this Court.  





[2]
He understood Acollateral@
to mean Apawning
something.@ 





[3] R.A.
testified that he later learned that the total amount of the bonds set for his
parents was $20,000, and he could have paid just $2,000 (ten percent) to a bail
bondsmen to secure the issuance of the bonds. 






[4] In their
brief, appellants posit, AWhat then were
the property transfers made for?@





[5]
Ibanez did not appear at the trial.  Attorney argument disclosed that he was
incarcerated at the time.





[6] In
order for a property transaction to be recorded in real property records, it
must be signed and acknowledged by the grantor in front of two credible
subscribing witnesses, or acknowledged and sworn to before an officer
authorized to take affidavits, such as a notary public.  Tex.
Prop. Code Ann. ' 12.001(b) (Vernon
Supp. 2002).  This transaction, not
subscribed to by witnesses or acknowledged by a notary public at the time it
was drafted, was therefore incapable of being properly recorded.  Therefore, it would be invalid against a
creditor or subsequent purchaser of the property for valid consideration.  Tex.
Prop. Code Ann. ' 13.001 (Vernon
Supp. 2002).  It would still be valid as
between the parties, however.  Tex. Prop. Code Ann. '
13.001(b) (Vernon
Supp. 2002).  





[7]
The Alvarados=
attorney advised the court that the Astatement
was produced and tendered to us just recently by the defendant=s
counsel.@ 





[8]
Due to the fact that we are reversing on a factual sufficiency
point of error and thus remanding for new trial, rather than rendering a
judgment as we would if we were reversing based on legal sufficiency, we need
not address other equitable issues that may be subsequently brought up and
developed at trial in this case, including the issue of mortgage payments made
by the Ibanezes on the property or the loss of use of
the property suffered by the Alvarados. See
Johnson, 726 S.W.2d at 8 (where judgment rendered, not remanded, the
reviewing court considered other equitable issues).  While an equitable decision involves doing fairness
to both parties in view of all the circumstances of the case, we cannot issue
an advisory opinion on the merits of potential claims to be raised by either
party in subsequent proceedings.  See
Patterson v. Planned Parenthood, 971 S.W.2d 439, 443 (Tex.
1998) (holding that state courts are not empowered to give advisory opinions).